Willie Lee GORDY, Appellant,

v.

STATE of Indiana, Appellee.

No. 977S632.

Supreme Court of Indiana.

March 2, 1979.

Harriette Bailey Conn, Public Defender, Kyle M. Payne, Deputy Public Defender, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Kenneth R. Stamm, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Appellant Gordy was convicted of second-degree murder in the Lake Criminal Court on December 19, 1970, and was sentenced to fifteen to twenty-five years imprisonment. This conviction was affirmed by this Court. *Gordy v. State,* (1974) 262 Ind. 275, 315 N.E.2d 362. A petition for post-conviction relief, pursuant to Ind.R.P.C. 1, was filed by appellant in June of 1975. After a hearing, this petition was denied on July 15, 1976, and the present appeal follows.

The sole question presented is whether appellant was denied due process of law, because of allegedly undisclosed evidence concerning the truthfulness of the testimony of a state's witness.

The facts necessary for an understanding of this issue are as follows. On June 25, 1970, appellant Willie Lee Gordy and four other men, Edward Mooring, Danny Dilworth, Crosby Morris, and Melvin Jones, were indicted for first-degree murder in the shooting death of one George Lowe. The decedent was a Gary police officer, who was killed during the afternoon of June 2, 1970, in the inner city section of Gary, when a group of men drove by the car he was in and fired into it. Defendants Morris and Jones were subsequently granted motions for separate trials. Defendants Mooring and Dilworth had the charges pending against them in this matter dismissed, for purposes of making them witnesses for the state. Thus, appellant Gordy stood trial alone.

At appellant's trial, witnesses Mooring and Dilworth both testified on behalf of the state, apparently in accordance with the purposes of the dismissal of their charges. Dilworth testified that he was in the car with appellant during the time of the shooting, that he heard the shots, and that he saw appellant's hand out the window holding the gun. However, Dilworth "couldn't say" if Gordy actually fired shots or not. Mooring testified that he also was in the car with appellant, that appellant actually did fire the gun, and that immediately after the shooting appellant stated that he had been "trying to kill a nigger ass." In addition to the above direct testimony, there was circumstantial evidence presented to connect appellant with the killing.

In question in the present appeal is the testimony of Mooring, in relation to the agreement he made with the state to testify against appellant Gordy. It is claimed that the full terms of this "deal" were not disclosed to the jury, and that Mooring perjured himself while testifying about this deal, which perjury the prosecution knew about and did nothing to correct. We note that this claim of perjury and prosecutorial suppression was not raised at all during appellant's original appeal to this Court. As the claim does not rest on any newly discovered evidence presented in the post-conviction hearing, it could be deemed waived under the post-conviction rules. Nevertheless, we will treat the substantive merits of this issue.

■ The prosecutorial duty to disclose evidence under the Due Process Clause of the Fourteenth Amendment of the United States Constitution, comes into question in three types of cases. *See generally United States v. Agurs,* (1976) 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342; *Richard v. State,* (1978) Ind., 382 N.E.2d 899. The present claim, if substantiated, would constitute the first and most serious type of case outlined by the above authorities: prosecutorial use of perjured testimony or testimony known to be false. Such a case invokes the highest level of appellate scrutiny in this area of law. The conviction must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. *Richard, supra,* 382 N.E.2d at 903. Further, Indiana has recognized a prosecutorial duty of voluntary disclosure of actual "deals" made with state's witnesses, such as promises, grants of immunity, and rewards offered in return for testimony. *Id.* at 904 *and cases cited therein.*

The record of appellant Gordy's 1970 trial reveals that witness Mooring was extensively and ably cross-examined, with reference to his agreement with the state, by appellant's trial attorney Mr. Cohen. Mooring's testimony at this time was guarded as to the exact terms of the arrangement. It is the following examination in particular, of Mooring by Mr. Cohen, which is argued by appellant herein to be indicative of perjury:

Q. When did you decide to tell the truth?

A. After I sat in jail with a Murder One Charge, and it looked like I wasn't ever going to get out, and I thought maybe the truth might set me free, then seeing nobody else would tell the truth.

. . . . .

Q. When you decided to tell the truth, as you say, you have told it here

today, the charge of Murder, First Degree, was dismissed against you, wasn't it?

A. Not that I know of.

Q. You don't know that you are no longer charged with Murder in the First Degree?

A. Yes.

Q. And the charge was dropped against you, wasn't it?

A. I guess so, sir.

Q. You guess so! Don't you know?

A. Well . . . .

.    .    .    .    .

Q. You employed an attorney to defend you in this case, didn't you?

A. Yes, sir.

Q. And didn't he tell you that the case was dismissed against you?

A. No, sir, not exactly, sir.

Q. Weren't you told, Mr. Mooring, that if you would testify against this defendant, Willie Gordy, and change your statement from what you gave to the Gary Police Department, that this charge of Murder, First Degree, would be dismissed against you?

A. No, sir.

.    .    .    .    .

Q. What did he tell you? Anything about dismissing the charge? Didn't he tell you anything?

A. No, sir.

Q. You just told him everything and he told you nothing?

A. I beg your pardon!

Q. You just told him everything and he didn't tell you anything in return?

A. No, sir, no deals were made, if that's what you are trying to say.

Q. No deals?

A. No, sir, if that's what you're saying.

After the above exchange, appellant's trial counsel read aloud the Motion to Nolle Prosse witness Mooring, which is apparently the only written record of the arrangement under which Mooring was testifying. This motion, which was filed in open court in Lake Criminal Court on September 4, 1970, read as follows:

"MOTION TO NOLLE PROSSE AS TO EDWARD MOORING ONLY

Comes Henry S. KOWALCZYK, Prosecuting Attorney, and moves the Court to dismiss the above entitled cause for the reasons following, to-wit: for the reason that after further investigation of this cause, the State of Indiana now moves to dismiss as to defendant, Edward Mooring, for the purpose of making Edward Mooring a witness for the State of Indiana.

[Signed] Henry S. Kowalczyk
Prosecuting Attorney
By: Raymond C. Sufana
Chief Deputy"

The above Motion to Nolle Prosse was later introduced a second time, as defendant's exhibit C, during defendant's case-in-chief. The state presented no evidence as to its dealings with witness Mooring at appellant's trial.

The record of the post-conviction hearing in this case does not conflict with the above trial record. Two witnesses testified: Mr. Nick Thiros, who had been witness Mooring's attorney at the time of these events, and Mr. Terrence Smith, who had been a Deputy Lake County Prosecutor at that time. Mr. Thiros testified, in essence, that he was sure that the state and his client had reached an agreement, after the prosecutor talked to Mooring, but that such agreement was not reduced to writing. The substance of this agreement was that Mooring would testify at trial, and that the murder charges against Mooring would then be dropped. Mr. Thiros did not know if the state would have been inclined to reindict or recharge Mooring in the event he refused to testify. Mr. Smith, the prosecutor, testified in this post-conviction hearing that he had handled this case for the state, and that he was sure that the state would not have dismissed the charges if Mooring had not been willing to testify. Mr. Smith also stated that he assumed that if Mooring had refused to testify after the dismissal of the charges, the case would have been resubmitted to the grand jury, although to his knowledge such

a circumstance had never occurred in any other case.

In sum, the record before us does not substantiate a claim either that witness Mooring perjured himself, or that the prosecution either intentionally or negligently withheld the complete and true terms of its agreement with Mooring. Rather, it appears that the state's agreement with Mooring was no more, and no less, than the description given it in the Motion to Nolle Prosse, which motion was in fact disclosed to appellant's trial attorney Mr. Cohen and which was twice introduced to the jury at appellant's trial. The evasive testimony of witness Mooring was not directed toward the existence of a plea arrangement, but on whether or not to call it a "deal". This testimony was impeached by the revelation of the basic substance of the agreement. *Cf. Skinner v. Cardwell,* (9th Cir. 1978) 564 F.2d 1381 *cert. denied,* (1978) 435 U.S. 1009, 98 S.Ct. 1883, 566 L.Ed.2d 392. It is, of course, better practice for the prosecutor to unequivocally state to the jury the entire nature and extent, if any, of the state's dealings with its witnesses. *See Hoskins v. State,* (1978) Ind., 375 N.E.2d 191, 194. However, we cannot say that his failure to do so in this case was error, both because Mooring's testimony about the arrangement was not demonstrably perjurious, and because the present trial occurred prior to the decision of *Giglio v. United States,* (1972) 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104, which heightens the affirmative duty of the prosecutor in completely disclosing all deals.

The judgment of the trial court is affirmed.

All Justices concur.