Wilbur CAREY, Appellant,

v.

STATE of Indiana, Appellee.

No. 280S29.

Supreme Court of Indiana.

March 5, 1981.

 

James A. Neel, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Carmen L. Quintana, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Appellant Wilbur Carey was charged in Marion Criminal Court, Division Two, with two counts of unlawful dealing in a controlled substance, to-wit: heroin, under Ind. Code § 35-24.1-4.1-1 (Burns 1975), and with being a habitual criminal, under § 35-8-8-2. On the motion of the State, the habitual criminal count was dismissed prior to trial. Carey was tried to a jury and convicted on the two remaining charges. The trial court sentenced him to twenty years on each count, and fined him in the amount of two thousand dollars on each count. Following the denial of two belated motions to correct error, appellant initiated this appeal.

The sole issue on this appeal concerns several alleged instances of prosecutorial misconduct regarding the informant's testimony and the disclosure of information about the informant. Appellant contends the prosecutor failed to disclose exculpatory evidence relating to the credibility of the informant. He further asserts that the informant made several statements during his testimony which the prosecutor knew or should have known were of a perjurious nature. Therefore, he argues, under *United States v. Agurs*, (1976) 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342, and *Richard v. State*, (1978) 269 Ind. 607, 382 N.E.2d 899, the convictions should be set aside as violative of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

The charges against Carey arose out of two controlled buys executed by an informant working for the Indianapolis Police Department and the federal Drug Enforcement Administration (D.E.A.). While this investigation was conducted and completed

primarily through the efforts of the Indianapolis Police Department, a number of D.E.A. agents assisted in the preparation of this case against Carey. On September 13, 1977, the informant, Stacy Shields, telephoned Carey at the latter's home in Indianapolis. Shields placed the call from a room in a hotel some distance away. Two Indianapolis Police Officers, Schneider and King, and a D.E.A. Special Agent, McGivney, were present in the room when Shields placed the call. With Shields' permission, Officer Schneider monitored and tape recorded the conversation. Appellant Carey agreed to meet Shields in the parking lot of the Meadows Shopping Center and sell him some heroin. At the same time, another Indianapolis Police officer was conducting visual surveillance on Carey's home.

At the conclusion of the conversation between Shields and appellant Carey, police officers prepared for Shields to make the heroin purchase from Carey. Police officers searched Shields' automobile and conducted a strip-search of Shields. Shields was then given one hundred thirty dollars to be used in buying the heroin from Carey. In addition, a "kel-set" radio transmitting device was placed in Shields' shirt pocket. Shields then drove his car to the Meadows Shopping Center to meet Carey. Police officers kept Shields in sight at all times. Meanwhile, Carey left his home in his automobile shortly after talking with Shields. A police officer followed Carey as he drove to the Meadows Shopping Center parking lot.

Upon arriving at the parking lot, Shields parked in the prearranged area. Two police officers parked a few hundred feet from Shields' car in a van. Shortly thereafter, Carey drove into the lot and parked next to Shields' car. Appellant Carey then exited from his car and joined Shields in the front seat of the latter's car. At that time, Carey gave Shields two small balloons containing a brown powdery substance, and Shields tendered the cash in the amount of the prearranged purchase price. Appellant Carey then returned thirty dollars to Shields, indicating he was willing to sell the heroin for only one hundred dollars. Carey

then returned to his own car and left the parking lot. Likewise, Shields returned to the hotel. This sequence of events in the parking lot was observed by the officers in the van and was recorded in a series of six photographs, showing Carey walking to Shields' car and sitting with him in the car.

At the hotel, police officers recovered the balloons and the thirty dollars from Shields. Once again, Shields' car was searched and Shields was subjected to a strip-search. No other narcotics or money was recovered from Shields' car or person.

The next day, September 14, this procedure was repeated with only minor differences. Four telephone calls were required to finalize plans for Shields to meet with Carey. Each call on the second day was also placed from the hotel room; however, Indianapolis Police Officer Schneider was the only law enforcement officer present. With the exception of these two facts, the second day's controlled buy proceeded along substantially the same lines as had the first day's purchase. The informant, Shields, was searched before and after the purchase, as was his automobile. A series of photographs also corroborated the informant's and the police officers' testimony as to what had taken place with appellant Carey.

The purchase on the second day also netted two small balloons containing a brown powdery substance. On both days, police officers conducted field tests on the substances, and the tests indicated the presence of an opium derivative. In addition, expert testimony from two forensic chemists established that the balloons obtained from appellant Carey contained heroin.

This recitation of the facts reveals that Stacy Shields was the linchpin in the narcotics investigation of Carey and was the key witness against him. As noted above, appellant asserts that he was victimized at trial by repeated acts of perjury allegedly committed by Shields and the prosecutor's failure to disclose exculpatory evidence concerning Shields to defense counsel and to the jury. While one alleged perjurious statement concerns one fact of the actual

case against Carey, the significance of the perjury and disclosure issues lies primarily in their bearing on the important question of Shields' credibility. We shall proceed to review these alleged instances of perjury and the alleged failure to disclose exculpatory evidence in the context of the entire trial.

Stacy Shields was the first witness called by the prosecution. He testified in detail concerning the two purchases of heroin from appellant Carey. Shields testified on direct and cross-examination that only Officer Schneider was present in the room when he telephoned Carey on the first day to arrange the first controlled buy. He also testified on direct examination that he had never been involved in the distribution of heroin and that he had never sold heroin. Shields asserted that he had volunteered to act as an informant in the investigation that resulted in the prosecution of Carey. He also testified that there were no pending state or federal charges pending against him, and that no promises or inducements had been given to him in exchange for his agreeing to testify against Carey. Shields further testified that his only felony arrest was in 1971 for a violation of the 1935 Firearms Act. At the conclusion of Shields' testimony, the court recessed for the day.

The next morning, before the jury was returned to the courtroom, the deputy prosecutor in charge of this case addressed the court. She stated that she had just been informed that federal surveillance reports indicated that Stacy Shields had delivered narcotics to an undercover federal agent. The prosecutor recognized that there was, to say the least, "some disparity" between these reports and the testimony given by Shields on the previous day. The prosecutor proposed to recall Shields to the witness stand to clear up this matter. In the colloquy which followed, defense counsel moved for a mistrial. Counsel argued that the prosecutor was charged with knowing of Shields' relationship with federal agents; he alleged that the Indianapolis Police detective in charge of this case actually knew when he first met Shields that Shields had delivered narcotics to federal agents. The

deputy prosecutor asserted that she had just learned for the first time of narcotics transactions between Shields and D.E.A. agents. She claimed that Shields never told her that he had sold drugs to anyone.

At that point, outside the presence of the jury, an evidentiary hearing was held, during which two law enforcement officers testified regarding Stacy Shields. Indianapolis Police Officer Tom Schneider testified that he directed the general investigation in which Stacy Shields was used as an informant, including the activities which led to the arrest of appellant Carey. Shields first became known to Schneider when he learned that Shields was a "courier" for a heroin distribution organization. In connection with the D.E.A., Indianapolis Police decided to have an undercover federal agent purchase heroin from Shields; as a result of the obvious bargaining leverage gained by police through such a transaction, Shields would be forced to work for them as an informant. This plan was put into action, and Shields unwittingly made three deliveries of heroin to Special Agent Howard Hayes of the D.E.A. These deliveries were made in early 1977, approximately six months before appellant Carey's two sales to Shields. Officer Schneider testified that Shields was never arrested for these deliveries, and that there were no pending state or federal criminal charges pending against Shields. He also testified that the details of Shields' deliveries to Agent Hayes were recorded in surveillance reports prepared by Indianapolis Police Officers and D.E.A. personnel. However, Schneider admitted that these reports, and therefore, apparently, direct knowledge of Shields' deliveries, were never presented to the prosecutor nor to Carey's trial counsel.

D.E.A. Special Agent James McGivney was the second witness called by the prosecutor. McGivney essentially corroborated Officer Schneider's account of the initial contact with and use of informant Stacy Shields. McGivney testified that Shields was picked up by federal agents in May of 1977. At that time, they confronted him with the information concerning his deliver-

ies of heroin to Agent Hayes, and, in fact, presented Agent Hayes to Shields to reinforce the point. In McGivney's words:

"At that time we ... explained to Mr. Shields that we wanted him to act as an informant for us, that if he did act as an informant we would advise the U. S. Attorney of everything that he did, and that after he was finished with any assignments that we gave him the U. S. Attorney would make a determination whether he was going to be charged with any federal narcotics violations or whether the case would be dismissed by plea bargain."

Record at 332. McGivney supported Officer Schneider's testimony that Shields was never arrested for any narcotics violations. He further testified that, in his conversations with the deputy prosecutor about this case, he does not recall whether he informed her of Shields' sales of heroin to D.E.A. Agent Hayes. This concluded the testimony presented to the trial court outside the presence of the jury.

Before the jury was recalled, further motions and arguments were heard. Defense counsel moved to strike the testimony of Stacy Shields for the reason that the prosecutor had failed to inform the jury of the agreement reached between Shields and law enforcement personnel, and had likewise failed to inform defense counsel of these facts prior to trial. The deputy prosecutor then again offered to recall Shields to the witness stand and have him clear up the obviously inconsistent statements which had surfaced. Defense counsel then moved for a mistrial. After the court overruled this motion, defense counsel moved for a thirty-day continuance to allow him to further investigate Shields and his relationship with law enforcement officials. Counsel asserted that he had only just learned that Shields had engaged in heroin transactions with a federal agent named Hayes; counsel further requested that Hayes be called to testify about this matter. This request was denied. The court denied these requests, but ordered that the prosecutor provide defense counsel with a copy of Shields' criminal record. The jury was then returned to the courtroom, and the taking of evidence resumed.

Stacy Shields was recalled as a witness by the prosecution. He acknowledged that he had met D.E.A. Agent Hayes through a drug transaction. Shields testified that he acted as a "middle man" in three heroin purchases made by Hayes. Shields asserted that he received the money from Hayes, but that he had someone else deliver the heroin to Hayes.

On cross-examination, defense counsel attempted to explore the obvious inconsistencies presented in the record. Counsel attacked Shields' testimony from the preceding day, in which he asserted that he had never been involved in the distribution of heroin. Shields continued to characterize himself as a "volunteer" informant, but acknowledged that his decision to act as an informant was stimulated by his knowledge, and that of the D.E.A., that he had unwittingly sold heroin to an undercover agent. Shields also testified that Indianapolis Police officers had given him money for expenses and that he acted as an informant, in part, to show his "appreciation for what [Officers Schneider and King] had did [sic] for me and my family." Record at 370. Shields also maintained on cross-examination that, although he had taken part in heroin transactions with D.E.A. Agent Hayes, he did not personally deliver the heroin to Hayes.

In *Richard v. State*, (1978) 269 Ind. 607, 382 N.E.2d 899, this Court discussed the issue of evidence which must be disclosed by the prosecutor. Interpreting *United States v. Agurs*, (1976) 427 U.S. 97, 96 S.Ct. 2391, 49 L.Ed.2d 342, we noted three types of cases in which the prosecutorial duty of disclosure comes into question: (1) cases in which undisclosed evidence demonstrates that the prosecution's case includes perjury; (2) cases in which the defense has made a pretrial request for specific evidence; and (3) cases in which evidence was not disclosed but where there was only a general request for discovery by the defense or no request at all. *Richard v. State, supra*, 269 Ind. at 611·12, 382 N.E.2d at 903.

The type of case involved also determines the applicable test for materiality to be applied on review. If the prosecution has knowingly used perjured testimony, whether that perjury relates to the defendant's guilt or to the credibility of a State's witness, the conviction "must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs, supra,* 427 U.S. at 103-4, 96 S.Ct. at 2397, 49 L.Ed.2d at 349–50, *quoted in Richard v. State, supra,* 269 Ind. at 612, 382 N.E.2d at 903. If the defense has made a specific request before trial for certain evidence favorable to the accused and that evidence is suppressed, the conviction will be reversed if the evidence "might have affected the outcome of the trial." *United States v. Agurs, supra,* 427 U.S. at 104, 96 S.Ct. at 2398, 49 L.Ed.2d at 350. Finally, when there has been no pretrial request for exculpatory evidence, or when the request was only general in nature, the omitted evidence, as evaluated in the context of the entire record, must create a reasonable doubt which did not otherwise exist. *Richard v. State, supra,* 369 Ind. at 614, 382 N.E.2d at 904, *quoting United States v. Agurs, supra,* 427 U.S. at 112–13, 96 S.Ct. at 2401–2, 49 L.Ed.2d at 355.

In addition, the prosecutor's duty to voluntarily disclose evidence to the jury exists when there has been a "deal" made with a State's witness, such as promises, a grant of immunity, or a reward offered in return for testimony. *E. g., Campbell v. State,* (1980) Ind., 409 N.E.2d 568, 570; *Turczi v. State,* (1979) Ind., 392 N.E.2d 481, 483; *Hoskins v. State,* (1978) 268 Ind. 290, 296, 375 N.E.2d 191, 194; *Newman v. State,* (1975) 263 Ind. 569, 572–73, 334 N.E.2d 684, 686–87; *Adler v. State,* (1967) 248 Ind. 193, 197, 225 N.E.2d 171, 173. *See Drollinger v. State,* (1980) Ind., 408 N.E.2d 1228, 1239. With these principles in mind, we shall proceed to discuss the specific claims raised by appellant Carey.

I.

The major potential problem concerning acts of perjury by Stacy Shields was resolved by the prosecutor during Shields' testimony and with the testimony of another prosecution witness. This, of course, related to Shields' assertion in his initial appearance as a witness that he had never been involved in the distribution of heroin. Subsequent testimony from Shields and Officer Schneider, clearly established that Shields sold heroin to a federal agent on three occasions; the agents' bargaining leverage, gained as a result of these transactions, was the principal reason why Shields became an informant. Unquestionably, the prosecutor in charge of the case against Carey should have known from the outset the circumstances surrounding the use of Shields as an informant, considering how crucial his testimony was in the State's case against Carey. *See Annunziato v. Manson,* (2d Cir. 1977) 566 F.2d 410. When law enforcement officials are aware of, and, in fact, cause arrangements such as this to exist, their failure to inform the prosecutor of such facts does not obviate the State's obligation, under the *Adler* line of cases, to make those facts available to the jury. *Freeman v. Georgia,* (5th Cir. 1979) 599 F.2d 65, *cert. denied,* (1980) 444 U.S. 1013, 100 S.Ct. 661, 62 L.Ed.2d 641. *See Giglio v. United States,* (1972) 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104; *Newman v. State, supra.* In any event, Shields' distribution of heroin to a federal agent prior to becoming an informant appears, based on the record before us, to have been adequately presented to the jury. Evidence was also presented to the jury from which they could infer that federal agents made general promises to Shields in exchange for his agreeing to act as an informant. From this record, we conclude that this incident did not involve the knowing use of perjured testimony by the State. *Cf. Mooney v. Holohan* (1935) 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791.

Likewise, we conclude that the deputy prosecutor did not breach her duty to present evidence to the jury of any promises made with Shields in exchange for his activities as an informant. Shields general-

ly admitted that he sold heroin to D.E.A. Agent Hayes, and that federal agents asked him to become an informant after confronting him with this fact. In addition, Shields acknowledged that Indianapolis Police Officers Schneider and King had done "favors" for him, and that he had received money for expenses from them. Schneider's testimony corroborated the latter fact. Of course, the prosecutor would have been well-advised to place before the jury the evidence adduced from Agent McGivney outside the hearing of the jury—namely, that federal agents told Shields they would advise the United States Attorney that Shields had acted as an informant for them, and that the United States Attorney would *thereafter* decide whether to prosecute Shields for delivery of heroin. "It is, of course, better practice for the prosecutor to unequivocally state to the jury the entire nature and extent, if any, of the State's dealings with its witnesses." *Gordy v. State*, (1979) Ind., 385 N.E.2d 1145, 1148. The prosecutor did elicit testimony, however, which established that Shields had never been arrested relative to the sales of heroin to Hayes. Thus, we believe the prosecutor, albeit with little room to spare, presented sufficient evidence under *Adler* and its progeny to allow the jury to fully assess Shields' credibility. *Turczi v. State, supra. See Stephens v. State*, (1973) 260 Ind. 326, 295 N.E.2d 622.

Finally, the evidence of Shields' involvement in heroin traffic and his distribution of narcotics to a federal agent raises a third, related question. Appellant Carey argues that the prosecutor knew or should have known that federal agents had offered a very favorable arrangement to Shields in exchange for his agreeing to act as an informant. Appellant asserts that trial counsel was not aware of these facts until they were revealed in the mid-trial hearing and that the prosecutor's failure to inform him before trial of Shields' situation amounted to the withholding of exculpatory evidence under *United States v. Agurs, supra.*

While we agree that this evidence had some tendency to be exculpatory in nature, and that the prosecutor should have disclosed Shields' arrangement to defense counsel prior to trial, we do not believe appellant was thereby denied a fair trial. The rule of *Agurs* presupposes a situation where the omitted evidence is neither disclosed to defense counsel prior to trial nor presented to the jury during trial. *See United States v. Agurs, supra*, 427 U.S. at 102, 96 S.Ct. at 2397, 49 L.Ed.2d at 349; *Brady v. Maryland*, (1963) 373 U.S. 83, 84, 83 S.Ct. 1194, 1195, 10 L.Ed.2d 215, 217; *Sypniewski v. State*, (1980) Ind., 400 N.E.2d 1122, 1123 ·24. The evidence in question here was, in fact, presented to the jury, and defense counsel had an ample opportunity to cross-examine Shields and Officer Schneider on this matter. Thus, we are not concerned here with evidence which was, in the final analysis, "suppressed" or "omitted" from the jury's consideration by the State. While defense counsel did request a continuance so that he might further investigate Shields, he does not argue on this appeal that the trial court erred in refusing to grant the continuance. Based on the evidence received from the two police officers outside the presence of the jury, and defense counsel's subsequent opportunity to take advantage of this evidence, we conclude that this evidence was adequately presented to the jury, and that appellant was not denied a fair trial due to the prosecutor's failure to disclose the evidence to counsel prior to trial.

## II.

A second allegation of the use of perjury is also based on testimony given by Stacy Shields. Concerning Shields' three sales of heroin to Agent Hayes, Shields maintained, even when recalled as a witness by the State, that he did not personally deliver the heroin to Hayes. Instead, he asserted, he received the purchase money from Hayes on each occasion, but had another person make deliveries of the narcotic to Hayes. However, testimony heard outside the presence of the jury directly contradicted this account. Officer Schneider testified at that hearing that he knew at the time Shields

became an informant that *Shields* delivered heroin to Agent Hayes. In fact, Officer Schneider was present in a remote surveillance capacity when two of the deliveries were made, although he did not personally observe the transactions. Officer Schneider also stated that Agent Hayes informed him that Shields had made the deliveries to Hayes. Schneider further acknowledged that Shields admitted making the deliveries. Officer Schneider testified before the jury that Shields had been involved in drug traffic, but he did not state specifically that Shields had personally made deliveries of heroin to Hayes. D.E.A. Agent McGivney also testified outside the presence of the jury that he knew Shields made the deliveries to Hayes.

Thus, it is apparent that, even when recalled to testify by the State, Stacy Shields did not reveal the full extent of his participation in the heroin deliveries to Agent Hayes. The inconsistency between Shields' version and the officers' version was and is obvious, yet only Shields' version was *clearly* presented to the jury. In fact, Shields insisted on cross-examination that he only arranged for the deliveries to be made. To this extent, it does appear that Shields committed an act of perjury in explaining his heroin transactions with Hayes, and that this misstatement was not *fully* corrected. Plainly, the prosecutor knew or should have known that Shields was, as appellant claims, "candy-coating" his relationship with Agent Hayes, and should have taken further steps to bring the entire story to the jury's attention. *See Napue v. Illinois,* (1959) 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217.

This conclusion, however, does not require a reversal of Carey's convictions. The jury was informed, in part through Shields' own testimony, that he was involved in the distribution of heroin, and that this involvement ultimately led to his acting as an informant for the D.E.A. and the Indianapolis Police. It appears, then, that Shields' credibility which was of great importance in the case against appellant Carey, was not hidden from the jury. For the purpose of assessing Shields' credibility, we do not see a meaningful difference between the two versions of previous involvement in the distribution of heroin. Thus, we do not believe "there is any reasonable likelihood that the false testimony [concerning whether Shields personally delivered heroin to a federal agent] could have affected the judgment of the jury." *United States v. Agurs, supra,* 427 U.S. at 103–4, 96 S.Ct. at 2397, 49 L.Ed.2d at 349–50. *See generally Richard v. State, supra.*

### III.

The third instance of alleged perjury on the part of the informant, Shields, concerns one detail of one of the crimes in question here. As explained above, the transactions between appellant Carey and Shields were each arranged during telephone conversations between the two. In relating the series of events to the jury, Shields, on direct examination, described the circumstances surrounding the telephone calls. He testified that he placed the calls from a hotel room, and that he had given permission to an Indianapolis Police officer to monitor and record the conversations. Concerning the call placed on the first day, the deputy prosecutor asked Shields who was present when the call was made; Shields replied that Indianapolis Police Officer Tom Schneider was present. On cross-examination, Shields was again asked who was present when he telephoned appellant Carey; he again answered that Schneider was in the hotel room. Defense counsel then asked Shields if anyone else was present and if any federal agent was present at the time. Shields answered "No" to both questions. However, Officer Tom Schneider testified for the prosecution that two other persons were present during Shields' call to Carey, and, further, that one of those present was federal agent James McGivney.

Thus, once again, prosecution witnesses gave directly conflicting testimony concerning a fact which was obviously within the knowledge of both. Shields was evidently attempting to soft-pedal the extent of his involvement with the D.E.A., or any

involvement of the D.E.A. in this case. The reasons for such an attempt are not readily apparent, for the fact of Shields' connection (as an informant) with the D.E.A., and the fact of the D.E.A.'s participation in this case, were made known to the jury through other prosecution witnesses. In any event, of critical importance during the first telephone call were the actions of Shields, Schneider and, of course, appellant Carey, not the presence or absence of additional law enforcement officers. Shields and Schneider presented substantially consistent testimony concerning the placing of the call, Shields' permission for Schneider to monitor and record the conversation, and the subject matter of the conversation. For these reasons, we do not believe there is any reasonable likelihood that Shields' false statement concerning who was present when the first telephone call was made could have affected the judgment of the jury. *Id.*

While the record presented to us here is obviously not a model of how a case of this type should be presented, we cannot conclude, based on this record, that perjured testimony was used to obtain Carey's conviction, or that he was otherwise denied a fair trial. The judgment of the trial court is affirmed.

GIVAN, C. J., and HUNTER, DeBRULER and PRENTICE, JJ., concur.