Barry Wayne ST. JOHN, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 34S00–8605–CR–422.

Supreme Court of Indiana.

May 27, 1988.

David R. Hennessy, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

Appellant Barry Wayne St. John was tried before a jury and convicted of robbery with a deadly weapon, a class B felony, Ind.Code § 35–42–5–1 (Burns 1986 Repl.). The trial court sentenced him to a term of twenty years imprisonment.

He raises five issues in this direct appeal:

1) Whether a prosecutor's threat to charge a State's witness as a co-conspirator if she did not appear at trial was an "inducement" which due process requires be revealed to the defense;

2) Whether evidence the victim told the prosecutor one testifying co-conspirator had minimized his own involvement establishes knowing use of perjured testimony by the State;

3) Whether the trial court erred in giving repetitive final instructions which emphasized one aspect of the case in derogation of the presumption of innocence;

4) Whether the evidence was sufficient to support the verdict, and

5) Whether the trial court failed to enter a sufficient statement of aggravating circumstances supporting the imposition of an enhanced sentence.

The evidence at trial showed that late on the evening of November 11, 1984, Trina Blackburn answered a knock at the door of her Kokomo home. A white male in his early twenties asked to speak to her husband, Kenny. When Trina said Kenny was asleep, the man pushed his way into the house, followed by another man wearing a ski mask and carrying two sawed-off shotguns.

The intruders' entry awakened Kenny, who had been asleep on the sofa. The robbers ordered the Blackburns to sit on the floor and asked if there were any drugs or weapons in the house. Kenny directed them to the bedroom, where the first robber found several shotguns and rifles, ammunition, and a small quantity of marijuana. While his confederate gathered the goods, the man wearing the ski mask held one shotgun against the head of each victim. After ripping the cord from the tele-

phone, the robbers left with the weapons, ammunition and drugs wrapped in a brown comforter.

Kokomo police were summoned to the Blackburn residence. They found the ammunition and the comforter in the parking lot of a nearby business. The Blackburns gave a general description of the robbers and told police they suspected Steve Carmack, a long-time acquaintance of Kenny.

Shortly thereafter, Indianapolis police investigating several residential burglaries in Marion County talked with informant Danny Ray Richards, who in turn directed them to Donna Kegeris. Kegeris told police about the Marion County burglaries. She also told them she was present on the evening of the Blackburn robbery in Kokomo.

That evening, Kegeris, Carmack, Gary Jarvis and the appellant left Indianapolis en route to Kokomo. They picked up Timothy Eldridge at his mother's home in Bunker Hill and went to his sister's home in Kokomo. Later that night, Kegeris waited in the car while St. John and Jarvis went to the Blackburn house carrying Carmack's sawed-off shotguns. After the robbery, the group left Kokomo, dropped Eldridge off at his mother's house, and returned to Indianapolis with the stolen goods. One of the guns was later recovered from its purchaser, who also provided a cancelled check issued to Steve Carmack for the purchase price.

Kegeris, Carmack, Jarvis and Eldridge all testified for the State at trial. Each identified St. John as the man wearing the ski mask. Kegeris was not charged for her participation in the crimes, Jarvis pled guilty and received a two-year suspended sentence, Carmack plead guilty and received eight years executed, and Eldridge pled guilty and received a five-year sentence. Both Carmack and Eldridge had two prior felony convictions and faced possible habitual offender charges and potential fifty-year sentences. The accomplices' plea agreements were disclosed to the jury in both direct and cross-examination.

## I. Forbearance of Prosecution

■ St. John asserts that the State threatened to prosecute Kegeris if she did not testify and that this inducement should have been revealed to the defense. St. John argues that this failure deprived him of due process, U.S. Const. amend. XIV, § 1, and due course of law, Ind. Const. Art. 1, § 12.

The prosecution's suppression of requested evidence favorable to the accused violates due process where the evidence is material to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). While this court has applied the *Brady* rule, *Birkla v. State* (1975), 263 Ind. 37, 323 N.E.2d 645, we have done so on the basis of the federal Constitution. St. John provides no authority or argument for a separate and independent standard under the Indiana Constitution. Thus, the state due course of law issue is waived.

Indiana has interpreted *Brady* and other federal cases to require that the State reveal the use of promises and offers of immunity, leniency, money or other benefit made by the prosecution to induce cooperation from a State's witness. *See Schmanski v. State* (1984), Ind., 466 N.E.2d 14. If such evidence is withheld in the face of a specific pre-trial request, the conviction must be reversed if the evidence "might have affected the outcome of the trial." *Richard v. State* (1978), 269 Ind. 607, 612, 382 N.E.2d 899, 903, (quoting *United States v. Agurs*, 427 U.S. 97, 104, 96 S.Ct. 2392, 2398, 49 L.Ed.2d 342, 350 (1976)).

■ In two separate motions, St. John requested that the State disclose any promises or representations of non-prosecution. At a hearing on pre-trial motions, defense counsel specified that St. John was particularly interested in any oral agreements.

At the hearing on the motion to correct error, St. John presented evidence that the State had been unable to serve Kegeris with a subpoena. In fact, Kegeris left Indianapolis and was living in Bunker Hill to avoid service of process. Kegeris still had not been served on the first day of trial, and the prosecutor spoke with Car-

mack and Eldridge about obtaining her presence at trial. Prosecutor Randy Hainlen described the discussion:

A: I made them aware that charges had not been filed against her and that there was a significant period of statute of limitations period [sic] that was still present and that if we felt that she was trying to avoid service of process, we would take that into consideration in any further dealings of how to handle her in regard to the case.

Q: So, the meaning or the import of your message was that if she didn't come to trial it was possible those charges would still be filed against her?

A: Yes. It's still possible.

As a result of this conversation with the prosecutor, Eldridge told Kegeris that charges could be filed against her but if she cooperated and testified at trial it "could affect that situation."

The threshold question is whether the prosecutor's implied threat of prosecution communicated to the witness through a third party is an "inducement" requiring disclosure. This court has required disclosure only when an actual agreement has been reached between the State and the witness. *See Carey v. State* (1981), 275 Ind. 321, 416 N.E.2d 1252 (state required to reveal agreement between federal agents and informant, but failure to disclose did not require reversal because jury heard evidence of agreement); *Newman v. State* (1975), 263 Ind. 569, 334 N.E.2d 684 (state's failure to reveal plea agreement between third party prosecutor and witness' attorney merits reversal).

Without concrete evidence of an agreement or understanding, we have not required disclosure. *See Burgin v. State* (1985), Ind., 475 N.E.2d 1155 (disclosure not required when witness charged with crime but not yet tried; no evidence of any transaction between prosecutor and witness); *Asbell v. State* (1984), Ind., 468 N.E.2d 845 (disclosure not required when witness not arrested or charged; no concrete evidence of an understanding); *Campbell v. State* (1980), 274 Ind. 88, 409 N.E.2d 568 (disclo-

sure not required when witness pled guilty two weeks after testifying; no evidence an agreement was reached before trial); *Turczi v. State* (1979), 271 Ind. 329, 392 N.E.2d 481 (disclosure not required when information against two witnesses dismissed after grand jury failed to return indictments; no evidence that dismissal was result of agreement).

Here, though there was evidence of a communication from the prosecutor to Kegeris, no understanding or agreement existed. The evidence does not lead to an inference of a secret agreement between the State and the witness. Had the State chosen to prosecute Kegeris following the trial, she would not have had any promise of forbearance to enforce. The transaction here does not rise to the level of an inducement requiring disclosure.

Kegeris' credibility was thoroughly challenged in cross-examination. In addition, Kokomo police officer David Kellar testified that Kegeris had not been charged for her role in the robbery and that charges could still be brought. The threat of prosecution was obvious to the defense and to the jury. The fact that the prosecutor reminded Kegeris of this possibility adds little.

■ St. John also alleges that he was denied his right to cross-examine Kegeris because he did not know of the State's "threat," citing *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). In *Davis,* the trial court foreclosed defense counsel from questioning a witness about his status as a probationer at the time he witnessed the crime. The Supreme Court recognized that the exposure of a witness' biases, prejudices and ulterior motives is an important function of the right of cross-examination. *Id.* at 317, 94 S.Ct. at 1111, 39 L.Ed.2d at 354.

In this case, St. John was not foreclosed from examining Kegeris on the subject of her possible biases. In fact, counsel conducted an extensive and effective cross-examination regarding Kegeris' relationships with the other participants and her possible interest in and motive for casting the blame on St. John. The jury was also

aware of her possible interest in avoiding charges for her own involvement. St. John was not denied his right of cross-examination.

## II. Perjured Testimony

■ St. John claims the State failed to disclose that Jarvis committed perjury. A conviction obtained through evidence which the State knows to be false violates due process. *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). When there is a reasonable likelihood that the judgment of the jury could have been affected by testimony known to be false, the conviction must be set aside. *Gordy v. State* (1979), 270 Ind. 379, 385 N.E.2d 1145.

■ It seems that when Kenny Blackburn heard Jarvis' testimony replayed for the jury, he told the prosecutor "that's not what happened" or "that's not right." Blackburn indicated that Jarvis' testimony was inaccurate in that it minimized Jarvis' involvement. Jarvis' account of the crime differed from the testimony of the other perpetrators and the victims. He painted himself as an innocent and misinformed participant who merely thought he was to pick up some money or marijuana owed to Carmack. Of course, each of the other participants also tended to minimize his own involvement.

Minor inconsistencies are not unusual when several witnesses testify about the same event. That participants in a crime view the events differently from the victims and from other participants is not surprising, nor does it rise to the level of perjury. The jury heard the somewhat inconsistent testimony of Jarvis, Blackburn and the other witnesses and judged their credibility accordingly. The State need not have informed the defense that the victim disagreed with one perpetrator's account of the crime. The defense already knew that.

## III. Repetitive Instructions

■ St. John argues that the court's final instructions to the jury were repetitive because the judge twice instructed the jury on reconciling the testimony of witnesses. Only one of the two instructions

on this subject also addressed reconciling the evidence with the presumption of innocence. Thus, St. John alleges, the testimonial aspect of the trial was emphasized in derogation of the presumption of innocence.

A certain amount of repetition is inherent in the nature of jury instructions. The defendant's substantive rights are not violated by instructions which are to some extent repetitive. *See Golden v. State* (1985), Ind., 485 N.E.2d 51 (two instructions on definition of forgery not improperly prejudicial); *Coleman v. State* (1984), Ind., 465 N.E.2d 1130 (instructions that intent was not element of felony murder and that state did not have to prove intent in felony murder not too repetitive).

Instructions become improper only when they "are so repetitious as to place an undue emphasis on a particular point...." *Johnson v. State* (1972), 258 Ind. 683, 687, 284 N.E.2d 517, 519. Reversal is required only when the instructions are so repetitive as to unduly emphasize a particular point or become argument by the court. *See Robbins v. Fugit* (1920), 189 Ind. 165, 126 N.E. 321 (giving fourteen to fifteen instructions on undue influence in will contest was needless repetition amounting to argument by the court).

Here, the judge read Indiana Pattern Jury Instruction (Criminal) Number 1.23, which includes the following:

> You should attempt to fit the evidence to the presumption that the defendant is innocent and the theory that every witness is telling the truth. You should not disregard the testimony of any witness without a reason and without careful consideration. If you find conflicting testimony you must determine which of the witnesses you will believe and which you will disbelieve.

> In weighing the testimony to determine what or whom to believe, you should use your own knowledge, experience and common sense gained from day to day living.

Over the objection of the defense, the judge also instructed the jury:

If there are conflicts in the evidence, it is your duty to reconcile the conflicts, if you can, on the theory that each witness has testified to the truth. If you cannot so reconcile the testimony, then it is within your province to determine whom you will believe and whom you will disbelieve. You should weigh the evidence and give credit to the testimony in light of your experience and observation in the ordinary affairs of life.

The judge also instructed the jury that the burden was on the State to prove all the elements of the offense beyond a reasonable doubt, that the State must overcome the presumption of innocence beyond a reasonable doubt, and that the jury should consider all the instructions as a whole. These instructions taken together correctly state the law and do not derogate the presumption of innocence. The instructions were not so repetitive as to emphasize one aspect of the case or amount to argument by the court. The judge properly instructed the jury.

### IV. Sufficiency of the Evidence

■ St. John alleges that the evidence was insufficient to support his conviction. He argues that the victims could not identify him, no physical evidence linked him to the crime, all the identification witnesses were participants who gained a benefit from testifying, and he presented alibi evidence. St. John's theory was that Richards, who committed the burglaries in Marion County with the other participants and led police to Kegeris, was the man wearing the ski mask. At the time of the robbery, St. John claims, he was at his father's home in southern Indiana.

The jury heard this evidence and was aware of the interests and motives of the State's witnesses. It chose to believe the State's evidence instead of St. John's. The evidence was such that they were entitled to do so.

### V. Sentencing

■ The trial court sentenced St. John to an enhanced term of twenty years. St. John claims the judge did not sufficiently state the aggravating circumstances supporting the enhanced sentence.

If the court finds aggravating or mitigating circumstances, it must record "a statement of the court's reasons for selecting the sentence that it imposes." Ind.Code § 35–38–1–3(3) (Burns 1985 Repl.). Findings of aggravating or mitigating circumstances are ultimate facts and require identification of subsidiary facts to support them. *Farina v. State* (1982), Ind., 442 N.E.2d 1104. The trial court must enter a specific and individualized statement of reasons for selecting the sentence. *Frappier v. State* (1983), Ind., 448 N.E.2d 1188.

The sentencing statement must contain: 1) an identification of all significant mitigating and aggravating factors, 2) the specific reason why the circumstance is considered aggravating or mitigating, and 3) an evaluation and balancing of the mitigating circumstances against the aggravating circumstances to determine if the circumstances in aggravation offset the circumstances in mitigation. *Henderson v. State* (1986), Ind., 489 N.E.2d 68. Such a specific statement assures that the judge considered only proper grounds and safeguards against imposition of arbitrary sentences. It also facilitates appellate review. *Id.* at 72.

■ Here, the trial court entered the following sentencing order:

Court now finds that the sentence required by statute is not an appropriate sentence and that the aggravating circumstances far outweigh any mitigating circumstances that exist and that such circumstances warrant an increased sentence. In consideration thereof, the Court has examined the prior record of the Defendant, the type and time of the offense, the weapons involved as well as other circumstances that [were] brought out in testimony as aggravating circumstances. . . .

A statement that the court has considered the "prior record" of the defendant is not sufficient to support an enhanced sentence. The incidents comprising the criminal activity must be particularly recited. *Farina,* 442 N.E.2d at 1106. The judge did not indicate that he relied on a criminal history contained in a presentence report, and

nothing in the record indicates St. John's "prior record."

 Similarly, a declaration that the court considered the "type and time of the offense" does not specify why this particular offense required an enhanced sentence. The record must reflect a relation of the facts of the crime to the sentence imposed and the objectives to be served by that sentence. *Id.* at 1106.

 Use of a weapon, without more, cannot support an enhanced sentence for armed robbery. A fact which comprises an element of the crime may not also constitute an aggravating factor absent something special about the way in which that element of the crime was committed. *See Townsend v. State* (1986), Ind., 498 N.E.2d 1198. The court did not point to any particular aspect of the use of the weapon which made its use an aggravating factor.

The statement of the trial court is insufficient to support the imposition of an enhanced sentence. The case is therefore remanded for a more specific statement of aggravating and mitigating circumstances, or for imposition of the presumptive sentence. *See Frappier,* 448 N.E.2d at 1189.

The cause is remanded for sentencing correction. In all other respects, the trial court is affirmed.

DeBRULER, GIVAN, PIVARNIK and DICKSON, JJ., concur.