Gary **GOODNER**, Appellant (Defendant Below),

v.

**STATE of Indiana**, Appellee (Plaintiff Below).

No. 49S00–9708–CR–469.

Supreme Court of Indiana.

July 23, 1999.

---

8. *See supra* note 4.

David M. Henn, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Preston W. Black, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

Gary Goodner was convicted of the murder of Robert Clark and was sentenced to sixty-five years imprisonment. In this direct appeal, Goodner raises three issues: (1) whether the trial court erred in admitting Goodner's statement to the police in violation of his federal and state constitutional rights; (2) whether Goodner was denied a fair trial because the prosecution did not timely inform defense counsel of favorable arrangements made with a State's witness in exchange for testimony against Goodner; and (3) whether the trial court erred in admitting into evidence a prior consistent statement of a State's witness. Although we find the belated disclosure of dealings with witnesses to be

highly problematic, under the circumstances of this case reversal is not appropriate. We affirm the trial court.

### Factual and Procedural Background

In late 1994, Goodner owed Clark money and Clark had threatened Goodner's mother and also had beaten Goodner over the debts. At approximately 2:00 a.m. on Christmas Eve of that year, Clark and Steven Mayes picked up Eva Jackson from a Christmas party. The three drove back to their apartment complex, where they lived in different apartments. As the three sat in the car, Goodner approached wielding a sawed-off shotgun and began arguing with Clark. Mayes and Jackson fled from the car. As Clark attempted to get out of the driver's seat, Goodner shot him in the groin with the shotgun. Clark fell to the ground and pleaded with Goodner not to shoot him again. Goodner then shot Clark once more and sped away in a waiting van. Clark bled to death from a severed femoral artery. Jackson later testified that she heard Goodner shoot Clark, and Mayes testified that he witnessed the shooting.

Goodner was arrested that night and charged with murder. After his arrest, Goodner gave a taped statement to Indianapolis police officer Jesse Beavers. During the interrogation, Officer Beavers and Goodner engaged in the dialogue quoted below before Goodner ultimately confessed to the killing. At trial, Goodner moved to suppress his statement to the police as obtained in violation of his Miranda rights. The trial court disagreed and admitted the statement.

On the second day of the trial, and after Mayes had concluded his testimony, the prosecutor revealed to defense counsel that he had offered to recommend a bond reduction for Mayes on an unrelated charge if Mayes would testify against Goodner. Mayes was then recalled, and on cross-examination by Goodner, Mayes denied the deal with the prosecutor. However, on re-direct examination Mayes admitted that such an arrangement was made. After Mayes was excused from the witness stand, the prosecution offered into evidence a prior statement that Mayes had given to police the night of the murder. The statement was consistent with Mayes' trial testimony, but only Officer Beavers was cross-examined concerning the statement.

The jury convicted Goodner of murder, and the trial court sentenced Goodner to sixty-five years.

### I. Admissibility of Statements to the Police

Goodner contends that his rights under the federal and state constitutions were violated when police continued to question him after he was interrogated by Officer Beavers as follows:

*Beavers:* \* \* \* \* You have also the right to stop answering questioning at anytime until you talk to a lawyer. Gary, do you understand those rights?

*Goodner:* Yes sir. But how can I get a lawyer, I can't get none this fast.

\* \* \* \*

*Beavers:* Well Gary you have to make a decision, either you want to talk to me now or you want to wait and talk to a lawyer and then talk to me. Regardless, Gary, you have been charged with the charge of murder. Now do you understand that?

*Goodner:* I understand that.

*Beavers:* Do you want to talk to me before you talk to a lawyer, Gary? That is your right to talk to a lawyer first.

\* \* \* \*

*Goodner:* I don't have too much to lose then, either way it goes.

*Beavers:* Well Gary, you, from my point of view you got to answer to me, do you want to talk to me or not?

*Goodner:* Yeah, I want to talk, but I do want do right on both things too, but I mean I want to talk to you too, but man, I know what I want to talk to you but then I don't know if I do talk to you then if I don't talk to you, then shit. Man it's kind of, I don't know man.

*Beavers:* Gary, I can't tell you what to do here in this situation \* \* \* \* But Gary you have a right to talk to a lawyer before you talk to me. I can only tell you that you have that right. You have to decide if [you] want to tell me your side of the story or not before you talk to a lawyer, I can't tell you that.

At the outset of the interrogation, Goodner had signed a written waiver of rights form and orally acknowledged that he had been advised of his rights and had agreed to waive them. The issue turns on whether, after the waiver, Goodner asserted his right to consult counsel under the federal or state constitution to require suppression of his later statements.

■ Review of the denial of a motion to suppress is similar to other sufficiency matters. The record must disclose substantial evidence of probative value that supports the trial court's decision. We do not reweigh the evidence and we consider conflicting evidence most favorably to the trial court's ruling. *See Taylor v. State,* 689 N.E.2d 699, 702 (Ind.1997); *see also Wilcoxen v. State,* 619 N.E.2d 574, 577 (Ind.1993); *Warner v. State,* 579 N.E.2d 1307, 1309 (Ind.1991).

### A. *Federal Constitutional Claim*

■ Goodner first argues that his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) were violated when police continued to question him after he made the quoted statements. Assertion of this right is governed by the objective standard set by the United States Supreme Court in *Davis v. United States,* 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). *Davis* held that the invocation of the Miranda right "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." *Id.* at 459, 114 S.Ct. 2350 (citation omitted). The level of clarity required to meet the standard must be that "a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.* In *Davis,* the defendant's statement "maybe I should talk to a lawyer" was held not to be a request for counsel. *Id.* at 462, 114 S.Ct. 2350. Here, the officer was very clear that if Goodner wished to talk to a lawyer, further interrogation would stop until the lawyer was consulted. Goodner did no more than express indecision followed by his continued dialogue with the officer.

As we held in *Taylor,* an expression of indecision is not enough if the interrogation makes clear that the questioning will stop and a lawyer will be furnished if requested. 689 N.E.2d at 703. The quoted exchange between Goodner and Officer Beavers is substantially identical to the facts in *Taylor.* For the reasons given in *Taylor, Sleek v. State,* 499 N.E.2d 751 (Ind.1986), is not controlling, and for the reasons explained in *Taylor, Davis* holds that no federal constitutional violation occurs under these circumstances. The interrogating officer had no duty to stop questioning, and any statements Goodner later made were admissible.

### B. *Indiana Constitutional Claim*

Goodner next claims that the same interrogation violated his rights under the Indiana Constitution. He argues that Article I, Section 14 of the Indiana Constitution requires the State to prove by the "heavy burden" of beyond a reasonable doubt that the waiver of self-incrimination occurred before Goodner's statement may be admitted into evidence. Goodner does not rely on Article I, Section 13 of the Indiana Constitution guaranteeing that "[i]n all criminal prosecutions, the accused shall have the right ... to be heard by himself and counsel."

■ Generally, Indiana "cases establish that there is a right not to be forced to speak, but there is no right to bar a confession freely given after appropriate warnings and waivers" under the self-incrimination provision of the Indiana Constitution. *Ajabu v. State,* 693 N.E.2d 921, 930 (Ind.1998). Goodner argues that the forgoing dialogue left it unclear whether he wanted an attorney before proceeding. This was undoubtedly correct at some points in the exchange. But ultimately, and before proceeding, the officer made clear that Goodner had a right to a lawyer and, if a request was made, the interrogation would stop and a lawyer would be provided. Goodner chose to proceed. Under these circumstances, and in the absence of any other coercion, a subsequent confession is voluntary as that term is used in the Indiana jurisprudence cited by Goodner.

### II. Failure to Disclose Arrangement With Witness

Goodner next contends that the prosecution's failure to disclose its deal with Mayes

constituted prosecutorial misconduct and greatly prejudiced Goodner because Mayes was the only witness who actually saw Goodner shoot Clark.

■ Generally speaking, the "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Even where no specific request was made by a defendant, suppression of material evidence by the prosecutor may violate a defendant's due process rights. *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Materiality of the evidence entails showing that there is a reasonable probability that in the event of disclosure "the result of the proceeding would have been different." *Id.* at 682, 105 S.Ct. 3375.

■ A prosecutor must fully disclose "express plea agreements or understandings between the State and witnesses, even where such agreements or understandings are not reduced to writing." *Wright v. State,* 690 N.E.2d 1098, 1113 (Ind.1997); *see also Gordy v. State,* 270 Ind. 379, 381, 385 N.E.2d 1145, 1146 (1979); *Newman v. State,* 263 Ind. 569, 573, 334 N.E.2d 684, 687 (1975) (citing *Giglio v. United States,* 405 U.S. 150, 153–54, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972)). The obligation to disclose such agreements is particularly important because " '[t]he jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence." *Wright,* 690 N.E.2d at 1113 (quoting *Napue v. Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959)).

■ Here, there is no doubt that Mayes's testimony was material to the case against Goodner. The testimony was important in determining Goodner's guilt, and was not merely information given to the police leading to his arrest. Complete failure to disclose this deal would constitute prosecutorial misconduct and require a new trial. However, in this case there was disclosure, albeit woefully belated, and we are directed to no plainly adverse effect on the defense. None-

theless, Goodner and his counsel were unaware of the arrangement between the prosecution and the witness until after Mayes had left the stand. Only then did the prosecutor reveal the arrangement. Mayes then lied about the deal he had made with the prosecution while testifying on re-cross-examination.

These facts are more egregious than those in *Carey v. State,* 275 Ind. 321, 416 N.E.2d 1252 (1981), cited by the State for the proposition that belated disclosure is good enough. In *Carey,* the State's witness became an informant for the police in exchange for the State's dropping criminal charges against him. In his direct testimony, the witness offered perjured testimony that he did not have a deal with the police. *Id.* at 1255. The prosecutor allegedly did not know of the witness's acting as an informant and had not disclosed this information to the defendant. *Id.* When the prosecutor learned of the witness's status as an informant, she recalled the witness to testify about his activities as an informant and the defense was allowed to cross-examine. *Id.* at 1256. On appeal, this Court held that although the prosecutor should have disclosed the arrangement to defense counsel prior to trial, the defendant still received a fair trial. *Id.* at 1258. We reasoned that because the informant status was ultimately presented to the jury, and defense counsel had an ample opportunity to cross-examine the witness, the impeaching evidence was adequately presented to the jury and thus the defendant was not denied a fair trial. *Id.* Under current doctrine reversal under these circumstances is not required.

There may be a valid explanation for the sequence of events at Goodner's trial, but none is apparent, and none was offered in the trial court. This conduct appears to be a recurring scenario. *See Williams v. State,* 714 N.E.2d 644 (Ind.1999); *Carey,* 416 N.E.2d at 1255–56. We cannot continue to tolerate late inning surprises later justified in the name of harmless error. Continued abuses of this sort may require a prophylactic rule requiring reversal. In the meantime, there are other sanctions for prosecutorial misconduct. The Indiana Rules of Profes-

sional Conduct require a prosecutor to "make *timely disclosure* to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense." Ind. Professional Conduct Rule 3.8(d) (emphasis added). Rule 8.4(d) also states that it is misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice." Members of the bar and the trial bench should remember their obligation to report such misconduct to the appropriate authorities. *See* Prof. Cond. R. 8.3(a) ("A lawyer having knowledge that another lawyer has committed a violation of the Rules of Professional Conduct ... shall inform the appropriate professional authority.").

### III. Admissibility of Prior Consistent Statement

Finally, Goodner contends that the trial court erred when it admitted a prior consistent statement of Mayes to rehabilitate Mayes after the arrangement with the prosecutor was revealed. The statement was a recorded interview taken by the police immediately after the murder. Goodner concedes that the statement was used to rebut a charge of recent fabrication by the witness. However, Goodner argues that because the prior statement was offered *after* Mayes had left the stand, the statement is inadmissible under Indiana Evidence Rule 801(d)(1)(B).

▄▄ Indiana Evidence Rule 801(d)(1) provides that a statement is not hearsay if:

[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... (B) consistent with the declarant's testimony, offered to rebut an express or implied charge against the de-

clarant of recent fabrication or improper influence or motive, and made before the motive to fabricate arose....

Although the predicate requirement set forth in Rule 801(d)(1) mandates that the declarant testify at trial and be "subject to cross-examination concerning the statement," if the declarant has not already been cross-examined on the statement, his availability to be recalled for cross-examination satisfies this requirement. *See Brown v. State,* 671 N.E.2d 401, 407 (Ind.1996) (finding that prior consistent statements could be admitted because the declarant "was available for cross examination regarding the statements he made"); *see also Kielblock v. State,* 627 N.E.2d 816 (Ind.Ct.App.1994). *But see Moran v. State,* 604 N.E.2d 1258 (Ind.Ct.App.1992). Similarly, most other jurisdictions allow admission of prior statements after the declarant has testified.[1] This Court has not specifically addressed this issue, but the Indiana Court of Appeals has followed the majority rule.[2] *See Ridenour v. State,* 639 N.E.2d 288, 295 (Ind.Ct.App.1994) ("[D]espite the fact that [the defendant] declined to cross-examine [the victims] concerning their prior consistent statements, he clearly was given the opportunity to do so.").

In this case, it is not as clear that Goodner had an opportunity to cross-examine Mayes regarding the prior statement. During court discussion, while the jury was temporarily removed from the courtroom, Goodner objected to the admission of the prior statement. The trial judge responded:

*Court:* \* \* \* \* It seems pretty apparent from a reading of this particular rule of evidence that this testimony would be proper. The statement, if it is consistent,

1. *See United States v. Hebeka,* 25 F.3d 287, 292 (6th Cir.1994) (rejecting rule that prior consistent statement may only be admitted through declarant, deeming the Seventh Circuit's contrary view a minority of one on this issue); *Alexander v. Conveyors & Dumpers, Inc.,* 731 F.2d 1221, 1231 (5th Cir.1984) ("While it may be the better practice to proffer the ... statement while the witness is still on the witness stand, no such requirement is mandated by the Rule or its underlying rationale."); *see also United States v. Montague,* 958 F.2d 1094, 1099 (D.C.Cir.1992); *United States v. Lanier,* 578 F.2d 1246, 1256 (8th Cir.1978) ("[T]he testimony of a third party may

be used to introduce the prior consistent statement of a witness after impeachment has been used to assail the witness' testimony as a fabrication.").

2. Judge Miller predicted correctly that: "Indiana's traditions from earlier law likely will lead it to follow the sounder majority rule allowing admission of a prior statement when the declarant is not on the stand as long as the declarant is subject to cross examination concerning the statement at some point in the proceedings." 13 ROBERT LOWELL MILLER, INDIANA PRACTICE § 801.404 (1995 & Supp.1998).

was made by a witness who did testify here at trial. Your re-cross examination of the witness Mayes had to do with improper influence or probably more likely motive that he might have to fabricate his testimony and this previous statement was made before this possible motive, that is, his release from jail after his testimony had been made prior to that, so it seems clear to the Court that this would fit within the provision of the rule.

The trial judge apparently misinterpreted Rule 801(d)(1)(b) to mean that cross-examination was necessary only to present evidence of fabrication, which in turn triggers the use of a prior consistent statement. The declarant should also be subjected to cross-examination "concerning the prior statement" or at least continue to be available for cross-examination. Mayes was excused before the admission of the prior consistent statement. However, there is no showing that he could not be subpoenaed again, and in light of his agreement with the prosecutor, presumably he was, as a practical matter, within the prosecutor's grasp. Goodner did not request that Mayes be recalled and nothing in the record suggests he could not have been produced. The record does not support a claim of unavailability of cross-examination, and the admission of the statement was not error.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN, and SELBY, JJ., concur.