## HOLSEY *v.* STATE OF INDIANA.

[No. 868-S-132. Filed February 3, 1970. No petition for rehearing filed.]

James L. *Brand*, Greenfield, for appellant.

Theodore L. *Sendak*, Attorney General, *Mark Peden*, Deputy Attorney General, for appellee.

ARTERBURN, J.—The appellant was convicted of first degree murder in the death of Jean Wright. The thrust of this appeal is based upon three contentions:

1. The trial court erred in submitting the list of counties for striking pursuant to appellant's motion for a change of venue.

2. The verdict is contrary to law because of the insufficiency of the evidence to show premeditated malice.

3. The appellant acted in self-defense.

We first consider the alleged error in the matter of submitting counties on application for a change of venue. The record indicates the indictment was venued originally in Marion County. Appellant filed a motion for a change of venue, stating that he could not receive a fair trial in two of the adjoining counties, namely, Shelby and Hamilton. The court sustained the motion for change of venue and submitted all the adjoining counties, namely, Morgan, Hendricks, Johnson, Hancock and Boone, excluding, as a result of the request of the appellant, the counties of Shelby and Hamilton. It is appellant's contention that Supreme Court Rule 1-12C required the judge to replace the adjoining counties omitted in the lists submitted. The pertinent part of Rule 1-12C reads as follows:

"Whenever in a criminal action an application for a change of venue from the county has been granted, the

county to which the case shall be venued shall be selected in the same manner as in civil cases. . . . Provided, however, if it appears to the regular judge or the presiding judge before whom an application for a change of venue from the county is pending that the grounds for such change also exist in one or more of the adjoining counties to which the case may be venued, such judge *shall have the right* to eliminate such county or counties from the list of counties to be submitted for striking and to substitute another county or counties where such grounds, in his opinion, do not exist in order that the defendant shall have a fair and impartial trial." (Emphasis added.)

In our opinion this rule is not mandatory. It does not compel the trial judge to exclude or substitute any particular county, but is discretionary. It reads:

". . . such judge shall have the right to eliminate such county or counties . . . and to substitute another county or counties . . ."

The appellant in this case was given five counties to which a change of venue could be had. It occurs to us that there are numerous counties in the State of Indiana which have three or fewer adjoining counties to which a change of venue may be taken. In the case before us the appellant fared better than those in such counties in the matter of selection and striking for the purpose of changing venue. We need not, however, give such matter further consideration because the record clearly shows that the appellant made no objection to the order which the court made venuing the cause to Hancock County, and when the cause reached Hancock County the appellant made no objection to the court's jurisdiction nor did he object when the cause was set for trial or at any time. Appellant went to trial and the time, expense and efforts of all parties concerned were expended on the assumption the court had jurisdiction. The court did have jurisdiction of the subject matter. He now on appeal for the first time questions the jurisdiction of the trial court having failed to properly make any objection at a time when any alleged error could

have been remedied. We see no merit in the contention of the appellant. *Bosley* v. *Farquar* (1827), 2 Blackford 61; *Clark* v. *State* (1853), 4 Ind. 268; 29 I. L. E., *Venue*, § 24, p. 32.

We next consider the argument that the verdict is contrary to law on the ground that the evidence is insufficient to show premeditated malice. In dealing with the evidence on this issue we must consider only the evidence most favorable to the state to sustain the jury's verdict. *Langley* v. *State* (1968), 250 Ind. 29, 232 N. E. 2d 611; *Davis* v. *State* (1968), 249 Ind. 373, 232 N. E. 2d 867.

The evidence shows that on Saturday evening, September 23, 1967, the appellant, with Jean Wright, the victim of the offense, went to the apartment of James Wright. James Wright was the husband of the decedent, from whom she had been living separately for some considerable time. When the appellant got ready to leave the apartment the decedent informed him she was staying with her huband. The decedent had been living with appellant for several months. The appellant insisted upon the decedent leaving with him. She refused and the appellant then drew a knife. James Wright disarmed appellant and appellant left. The knife was returned to him.

The appellant returned again the same evening with three other companions, and finding the husband present, they all left. The decedent spent the night with her husband. The appellant then returned a third time the next morning about 11 o'clock without seeing either of them. The appellant returned a fourth time later the same day and found James and Jean Wright in bed together. The decedent told appellant she would not leave and she was going to remain with her husband. Appellant then stated: "I'll fix you. I'll fix you all." Appellant thereafter called the police, who came to the premises. Appellant was informed that James and Jean Wright were married and was told to leave the premises and "cool off." The appellant then walked about 80 feet down the alley and sat on a

rock. After the police officers left, appellant returned again to the premises, and upon meeting the decedent and James Wright, stabbed James Wright and immediately thereafter allegedly stabbed the decedent, from which stab wounds the decedent died.

The appellant contends there is no evidence that decedent was stabbed with a "knife." In our opinion such a detail is not material, since the evidence is uncontradicted that she was "stabbed," and it would have had to have been through the use of an instrument similar to and as dangerous as a knife. However, all the evidence in the case points to the use of a knife. Appellant admittedly had a knife. The appellant, on taking the witness stand, stated: "I took my knife out and stuck him (James Wright) with it." and immediately thereafter he was seen stabbing the decedent. The appellant then testified that when he fled the premises following the stabbing of the decedent: "I had my knife in my hand." It is difficult for us to draw any other conclusion than that which the jury drew—that the decedent was stabbed with a knife. This is corroborated by a witness who saw the appellant make stabbing motions and the physician who testified that the wounds of the decedent resulted from stabbing. In our opinion, even assuming the instrument used was not a knife as charged in the indictment, there would be no material variance since the weapon obviously was of the same character and inflicted the same type of wound. *Madison* v. *State* (1955), 234 Ind. 517, 130 N. E. 2d 35; *Shaw* v. *State* (1959), 239 Ind. 248, 156 N. E. 2d 381.

It appears that premeditated malice is amply supported by the evidence in this case, both from the nature of the instrument used for inflicting the wound, the number of wounds inflicted and the statements of the appellant when he said: "I'll fix you. I'll fix you all." The evidence further shows he returned to the premises a number of times to renew the altercation.

The intentional or deliberate use of a deadly weapon in a manner likely to cause death sufficiently supports the finding of malice. *Miller* v. *State* (1962), 242 Ind. 678, 181 N. E. 2d 633; *Maxey* v. *State* (1969), 251 Ind. 645, 244 N. E. 2d 650; *Brown* v. *State* (1969), 252 Ind. 161, 247 N. E. 2d 76.

Appellant finally contends that his own testimony as to self-defense should have been believed and accepted by the jury. The appellant, it is evident, was in a place where he had no right to be and was ordered off the premises by the husband and also by the police officers prior to the killing, but he persisted in returning. We feel, from all the evidence in the case, that the jury had a right to disbelieve the appellant and accept other facts in the case which support their finding.

We further point out that this question is waived because the appellant does not raise the point in his memorandum in support of his motion for a new trial under Supreme Court Rule 1-14B. *Lynch* v. *State* (1969), 252 Ind. 54, 245 N. E. 2d 334; *Graham* v. *State* (1969), 252 Ind. 367, 249 N. E. 2d 25.

The judgment of the trial court is affirmed.

Hunter, C.J., Givan, J., concur; DeBruler, J., concurs with opinion; Jackson, J., concurs in result.

### CONCURRING OPINION

DEBRULER, J.—I concur fully in the decision on the merits of this appeal. I do not, however, agree with the final statement in the opinion that a waiver of the right to raise an issue was effected by appellant's failure to include that point in his Rule 1-14B memorandum, and here re-assert the position stated in my dissent in *Graham* v. *State* (1969), 252 Ind. 367, 249 N. E. 2d 25.

NOTE.—Reported in 254 N. E. 2d 859.