## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 12 2018, 5:42 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cynthia M. Carter
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Scottie Edwards,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

April 12, 2018

Court of Appeals Case No.
49A02-1707-PC-1651

Appeal from the Marion Superior Court, Criminal Division 6

The Honorable Mark D. Stoner, Judge

The Honorable Jeffrey L. Marchal, Magistrate

Trial Court Cause No.
49G06-0102-PC-036584

**Mathias, Judge.**

[1] Scottie Edwards ("Edwards") appeals the order of the Marion Superior Court denying his petition for post-conviction relief. Edwards presents three issues on appeal, which we renumber and restate as:

I. Whether the post-conviction court clearly erred by not applying the law of the case doctrine;
II. Whether the post-conviction court clearly erred in concluding that Edwards was not denied the effective assistance of trial counsel;
III. Whether the post-conviction court clearly erred in concluding that Edwards was not denied the effective assistance of appellate counsel; and
IV. Whether the post-conviction court abused its discretion in denying Edwards's motion to correct error.

We affirm.

## Facts and Procedural History

[2] The facts underlying Edwards's conviction were first set forth by this court in Edwards's direct appeal from his first jury trial as follows:

> Lynn Ford, the victim of the stabbing in this case, began dating Edwards's ex-wife in January of 2001. In early February of 2001, witnesses saw Edwards sitting in a vehicle in the apartment complex where Ford lived, watching Ford's apartment by using binoculars. One witness also saw Edwards remove mail from Ford's mailbox.
>
> On February 11, 2001, Ford returned to his apartment following a date with Edwards's ex-wife. As he walked up the sidewalk, he was confronted by Edwards. Both individuals testified to differing versions of what occurred. Edwards claimed that Ford punched him and that he only stabbed Ford in self-defense. Ford claimed that Edwards lunged at him, knocking him to the ground and then stabbed him several times. Ford was taken to the

hospital and treated for stab wounds to the back, arm, side, and back of the head, and for a punctured lung.

*Edwards v. State*, 773 N.E.2d 360, 362 (Ind. Ct. App. 2002), *trans. denied* ("*Edwards I*").

*A. Edwards's First Trial and Appeal*

[3] The State charged Edwards with attempted murder. At a jury trial, the trial court, over Edwards's objection, gave the following instruction on attempted murder:

> The crime of attempted murder is defined as follows: A person attempts to commit a murder when, acting with the conscious purpose of killing another person, he engages in conduct that constitutes a substantial step toward killing the person.
>
> To convict the Defendant of attempted murder, the State must have proved each of the following elements beyond a reasonable doubt:
>
> The Defendant, Scottie R. Edwards
>
> 1. acting with the specific intent to kill Lynn Ford
>
> 2. did *knowingly* stab with a deadly weapon, that is, a knife at and against the person of Lynn Ford
>
> 3. which was conduct constituting a substantial step toward the commission of the intended crime of killing Lynn Ford.
>
> If the State failed to prove each of these elements beyond a reasonable doubt, you cannot [find] the defendant guilty.

> If the State did prove each of these elements beyond a reasonable doubt, you may find the defendant guilty of the crime of Attempt[ed] Murder, a Class A felony.

*Id*. at 362–63 (emphasis and alterations added in *Edwards I*). Edwards also tendered an instruction on the lesser-included offense of battery, which the trial court denied. The jury found Edwards guilty as charged, and Edwards appealed.

[4] On appeal, Edwards claimed that the trial court erred in instructing the jury regarding the requisite *mens rea* for the crime of attempted murder, that the trial court erred in refusing to instruct the jury on the lesser-included offense of battery, and that the trial court erred by admitting into evidence Edwards's statement to the police.

[5] The *Edwards I* court agreed with Edwards that the trial court's instruction regarding attempted murder amounted to reversible error. *Id*. at 363–64. The court noted that, in *Spradlin v. State*, 569 N.E.2d 948 (Ind. 1991), our supreme court first announced the "now well-known standard" that "a trial court may not instruct the jury that a 'knowing' mens rea is sufficient to establish guilt for attempted murder." *Edwards I* at 363. Because Edwards properly preserved the issue by objecting to the erroneous instruction, he did not have to establish fundamental error and instead was entitled to "automatic reversal." *Id*. (citing *Greer v. State*, 643 N.E.2d 324, 326 (Ind. 1994)). The *Edwards I* court concluded:

> The instruction as given was clearly improper. As has been mandated by both our Supreme Court and this court,

"knowingly" should not be used in an instruction on attempted murder. While the correct mens rea was included in the jury instruction, we have no means of determining whether the use of the term "knowingly" may have impacted the jury's determination of Edwards's guilt. Accordingly, we reverse Edwards's conviction for attempted murder.

*Edwards I*, 773 N.E.2d at 363–64 (citations and footnotes omitted).[1]

### B. Edwards's Second Trial and Appeal

On remand, Edwards was again tried for attempted murder. The State did not amend the charging information, which mentioned both the improper "knowingly" *mens rea* but also alleged that Edwards had the intent to kill Ford:

> Scottie Edwards, on or about February 11, 2001, did attempt to commit the crime of Murder, which is to *knowingly* kill another human being, namely: Lynn Ford, by engaging in conduct, that is: *knowingly* stabbing with a deadly weapon, that is: a knife, at and against the person of Lynn Ford, *with the intent to kill Lynn Ford*, resulting in serious bodily injury, that is: stab wounds of the torso, arms, and face, which conduct constituted a substantial step toward commission of said crime of Murder[.]

Appellant's App. Vol. 4, p. 125 (emphases added).

Among the evidence the State presented was the testimony of the victim, Ford, from the first jury trial, as Ford had died from natural causes in February 2002.

---

[1] The court further held that there was sufficient evidence to support a conviction for attempted murder and that retrial was therefore permissible. *Id*. at 364. The court also addressed the other two issues Edwards presented, which were likely to resurface on retrial. Specifically, the court held that the trial court should have given the instruction on the lesser-included offense of battery and that the trial court did not err in admitting Edwards's statement to the police. *Id*. at 365–66.

The charging information was, as is common practice, included with the jury instructions. Importantly, though, the trial court gave the jury an attempted murder instruction which made no use of the improper "knowingly" *mens rea*:

> A person attempts to commit murder, a Class A felony, when, *acting with the conscious purpose of killing another person*, he engages in conduct that constitutes a substantial step toward the commission of the crime of Murder.
>
> The crime of Murder is defined by statute as follows:
>
> A person who *intentionally kills* another human being commits Murder.
>
> The elements of this offense are that the Defendant must:
>
> 1.  *intentionally*
>
> 2.  engage in conduct that constituted a substantial step toward the commission of
>
> 3.  *intentionally* killing another human being.
>
> Intent to kill may be inferred from the use of a deadly weapon in a manner reasonably calculated to cause death.

*Edwards II* Appendix Vol. 1, p. 190 (emphases added).[2] The jury convicted Edwards of attempted murder, and Edwards again appealed.

[8]     In Edwards's second direct appeal, he argued that the trial court erred by imposing an enhanced sentence based upon facts not found by the jury, in violation of the Sixth Amendment as interpreted in the then-recent case of *Blakely v. Washington*, 542 U.S. 296 (2004), and that his sentence was

---

[2] The instructions were typed with all capital letters. We have adjusted the capitalization to facilitate reading of the instruction.

inappropriate. Finding the first issue to be dispositive, we reversed Edwards's sentence and remanded with instructions that "the trial court . . . either convene a jury for sentencing purposes or impose the presumptive sentence of thirty years for Edwards's attempted murder conviction." *Edwards v. State*, 822 N.E.2d 1106, 1110 (Ind. Ct. App. 2005) ("*Edwards II*").

### C. Edwards's Third Sentencing and Appeal

On remand, the State filed a notice of the aggravating factors it intended to prove at the resentencing hearing. The trial court subsequently empaneled a jury and conducted a two-day sentencing hearing at which the State proved certain aggravating factors to the jury. Included in the evidence presented to the jury was Ford's testimony from the first jury trial. The jury ultimately found that the State had proved nine aggravating factors beyond a reasonable doubt. Based on these factors, the trial court again sentenced Edwards to forty years imprisonment, and Edwards appealed yet again.

In his third direct appeal, Edwards argued that the trial court abused its discretion in admitting Ford's prior testimony at the resentencing hearing, and that his sentence is inappropriate under Appellate Rule 7(B). We held that Ford's statement was admissible because the Indiana Rules of Evidence did not apply at sentencing hearings and that Edwards's sentence was not inappropriate. *Edwards v. State*, No. 49A04-0702-CR-75, 2007 WL 3053299 at *2–3 (Ind. Ct. App. Oct. 22, 2007), *trans. denied* ("*Edwards III*").

*D. Edwards's Petition for Post-Conviction Relief and the Instant Appeal*

On October 19, 2010, Edwards filed a *pro se* petition for post-conviction relief, which he amended on June 10, 2011.[3] On February 1, 2016, Edwards, now represented by counsel, filed another amended petition for post-conviction relief. Edwards subsequently filed a motion for summary disposition, which the post-conviction court denied. The post-conviction court held evidentiary hearings on Edwards's petition on March 17, October 13, and October 20, 2016. The post-conviction court entered findings of fact and conclusions of law denying Edwards's petition on April 27, 2017. Edwards then filed a motion to correct error on May 30, 2017, which the post-conviction court denied on June 26, 2017. Edwards now appeals.

# Post-Conviction Standard of Review

Our standard of review of claims that a post-conviction court erred in denying relief is well settled:

> Post-conviction proceedings are not "super appeals" through which convicted persons can raise issues they failed to raise at trial or on direct appeal. Rather, post-conviction proceedings afford petitioners a limited opportunity to raise issues that were unavailable or unknown at trial and on direct appeal. A post-conviction petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. On appeal from the denial of post-conviction relief, the petitioner stands in the

---

[3] On December 19, 2014, Edwards filed a petition to modify his sentence. The trial court denied Edwards's petition on January 6, 2015. Edwards appealed, and this court affirmed the trial court's denial of Edwards's petition to modify. *Edwards v. State*, No. 49A04-1502-CR-47, 2015 WL 4746231 (Ind. Ct. App. Aug. 11, 2015), *trans. denied*.

position of one appealing from a negative judgment. To prevail on appeal from the denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court.

Where, as here, the post-conviction court makes findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6), we cannot affirm the judgment on any legal basis, but rather, must determine if the court's findings are sufficient to support its judgment. Although we do not defer to the post-conviction court's legal conclusions, we review the post-conviction court's factual findings under a clearly erroneous standard. Accordingly, we will not reweigh the evidence or judge the credibility of witnesses, and we will consider only the probative evidence and reasonable inferences flowing therefrom that support the post-conviction court's decision.

*Manzano v. State*, 12 N.E.3d 321, 325 (Ind. Ct. App. 2014) (citations omitted) *trans. denied*. With this deferential standard of review in mind, we review Edwards's claims.

## I. The Law of the Case Doctrine

[13] Edwards first argues that the post-conviction court erred by failing to apply the law of the case doctrine to vacate his conviction. "The law of the case doctrine provides that an appellate court's determination of a legal issue binds both the trial court and the appellate court in any subsequent appeal involving the same case and substantially the same facts." *Murphy v. Curtis*, 930 N.E.2d 1228, 1234 (Ind. Ct. App. 2010), *trans. denied* (citing *Dutchmen Mfg., Inc. v. Reynolds*, 891 N.E.2d 1074, 1082 (Ind. Ct. App. 2008)). The law of the case doctrine is based

upon the sound policy that, once an issue is litigated and decided, that should be the end of the matter. *Id*. (citing *Godby v. Whitehead*, 837 N.E.2d 146, 152 (Ind. Ct. App. 2005)).

[14] Edwards argues that the law of the case doctrine required the court in his 2003 retrial to avoid using the *mens rea* of "knowingly" in its instruction to the jury regarding the crime of attempted murder. As noted, in *Edwards I*, this court held that the attempted murder instruction given in the first trial was erroneous because it failed to inform the jury that the State was required to prove that Edwards specifically intended to kill Ford and improperly allowed the jury to convict if it found that he only knowingly attempted to kill Ford. *Edwards I*, 773 N.E.2d at 363–64. Edwards argues that the trial court in his 2003 retrial failed to follow our instructions upon remand. As set forth above, however, the instruction given to the jury defining the crime of attempted murder did *not* include the improper *mens rea* of "knowingly." *Edwards II* Appendix Vol. 1, p. 190.

[15] Edwards's argument is based on the fact that the jury instructions in the second trial included the charging information, which was not amended. As set forth above, the charging information included the improper *mens rea* of knowingly. *See* Appellant's App. Vol. 4, p. 125. According to Edwards, this was improper, and he argues that the post-conviction court erred in denying relief on this basis.

[16] We cannot ignore, however, that this argument is presented as a free-standing claim of error. Such free-standing claims are generally unavailable in post-

conviction proceedings. *See Timberlake v. State*, 753 N.E.2d 591, 597–98 (Ind. 2001) (noting that most free-standing claims of error are not available in post-conviction proceedings because of the doctrines of waiver and res judicata). It is well settled that if an issue was known and available on direct appeal, but not raised on direct appeal, it is waived for purposes of post-conviction relief. *See id.* at 597. Here, there is no indication that Edwards's argument was not known and available at the time of Edwards's second direct appeal. Accordingly, it is waived,[4] and Edwards's claim of instructional error may only be presented on post-conviction under the guise of a claim of ineffective assistance of counsel. *See id.*

## II. Ineffective Assistance of Trial Counsel

[17] In addition to his free-standing claim of instructional error, Edwards also argues that the post-conviction court erred in concluding that he was not deprived of the effective assistance of trial counsel at his 2003 retrial. In *Timberlake,* our supreme court summarized the law regarding claims of ineffective assistance of trial counsel as follows:

> A defendant claiming a violation of the right to effective assistance of counsel must establish the two components set forth

---

[4] Nor can Edwards's free-standing claim be salvaged by framing it as a claim of fundamental error. Our supreme court has explicitly held that claims of fundamental error are not cognizable in claims for post-conviction relief. *See Sanders v. State*, 765 N.E.2d 591, 592 (Ind. 2002). "In post-conviction proceedings, complaints that something went awry at trial are generally cognizable only when they show deprivation of the right to effective counsel or issues demonstrably unavailable at the time of trial or direct appeal." *Id.* Here, there is no indication that Edwards's claim of instructional error was demonstrably unavailable at the time of his second direct appeal.

in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel's representation fell below an objective standard of reasonableness, and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. The *Strickland* Court recognized that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. The two prongs of the *Strickland* test are separate and independent inquiries. Thus, if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.

753 N.E.2d at 603 (citations and quotations omitted). Edwards claims that his trial counsel's performance was deficient in several ways.

*A. Failure to Object to Mens Rea in Charging Information*

First and foremost among Edwards's claims of ineffective assistance is that his trial counsel failed to ensure that the charging information was amended and that the jury was instructed with regard to the proper *mens rea* for the crime of

attempted murder. Edwards argues that permitting the jury to see the un-amended charging information, with its reference to a *mens rea* of "knowingly," was improper, and that his trial counsel was ineffective for failing to object to including the language from the charging information in the jury instructions.

[19] The State argues that Edwards's trial counsel did not perform deficiently. The State notes that Edwards's trial counsel tendered jury instructions regarding attempted murder in an effort to ensure that the jury was properly informed of the requirement that the State prove the specific intent to kill. Specifically, she tendered proposed final instruction 3, which provided:

> The crime of attempted murder is a "specific intent" crime. Thus, in order to convict the defendant of attempted murder as charged in count one of the information you must find that at the time he stabbed at Lynn Ford he had the specific intent to kill him.

*Edwards II* Appendix Vol. 1, p. 204. The trial court refused this instruction on grounds that the substance of this instruction was already covered in the preliminary instructions defining the crime of attempted murder. *Edwards II* Tr. p. 507.

[20] Edwards's trial counsel also tendered proposed final instruction 7, which provided:

> The crime of attempted murder is defined as follows: A person attempts to commit a murder when, acting with the conscious purpose of killing another person, he engages in conduct that constitutes a substantial step toward killing that person.

> To convict the Defendant of attempted murder, the State must prove each of the following elements beyond a reasonable doubt:
>
> The Defendant Scottie R. Edwards
>
> 1. acting with specific intent to kill Lynn Ford
> 2. did stab with a deadly weapon, that is, a knife at and against the person of Lynn Ford
> 3. which was conduct constituting a substantial step toward the commission of the intended crime of killing Lynn Ford.

*Edwards II* Appendix Vol. 1, p. 208. This latter instruction is based on the then-existing pattern jury instruction. *See* Indiana Pattern Jury Instruction 2.01(a) (2d ed. 1991 & Supp. 1999).

[21] The trial court also refused this instruction because its substance was covered by the preliminary instruction defining the crime of attempted murder. Edwards's trial counsel also made objections on the record regarding the trial court's jury instructions to preserve any error for purposes of appeal. *Edwards II* Tr. p. 509. That the trial court did not give the instructions tendered by Edwards's counsel does not mean that her performance was deficient.

[22] We further disagree with Edwards that his trial counsel's performance was deficient because she did not object to the inclusion of the language of the charging information in the instructions. It is well settled that jury instructions are to be considered as a whole, not in isolation. *O'Connell v. State*, 970 N.E.2d 168, 172 (Ind. Ct. App. 2012) (citing *Munford v. State*, 923 N.E.2d 11, 14 (Ind. Ct. App. 2010)). Here, the jury instructions as a whole clearly informed the jury that, before it could convict Edwards of attempted murder, it was required to

find that he acted intentionally, not knowingly. Indeed, the trial court's final instruction defining attempted murder referenced the intent to kill no fewer than four times.[5]

[23] The charging instruction was given to the jury, but only to explain the charge as brought by the State, not to inform the jury of the essential elements of the crime. In fact, attached to the charging information that was given to the jury was the following explanation: "Submitted to you for trial is a criminal charge brought by the State of Indiana against the Defendant, to which the Defendant has entered a plea of not guilty[.]" *Edwards II* Appendix Vol. 1, p. 185.

[24] And even if we assume deficient performance, we are unable to say that Edwards has demonstrated any prejudice. The jury was instructed that, in order to convict Edwards of attempted murder, it was required to find that the State proved beyond a reasonable doubt that Edwards intentionally engaged in conduct that constituted a substantial step toward the intentional killing of another human being. There was no mention of the forbidden *mens rea* of "knowingly" in the trial court's definitional instruction.

---

[5] In his reply brief, Edwards notes that our supreme court has held that "'where the trial court lists the elements of attempted murder and includes an incorrect mens rea, this error cannot be cured by another instruction.'" *Clark v. State*, 668 N.E.2d 1206, 1210 (Ind. 1996) (quoting *Beasley v. State*, 643 N.E.2d 346, 348 (Ind. 1994)). This rather strict rule seems to have been tempered over the years, as our supreme court has more recently explained that, even if an instruction failed to instruct the jury with regard to the requirement of a specific intent to kill, such error is considered harmless if the requirement of a specific intent to kill was set forth in other instructions. *Rosales v. State*, 23 N.E.3d 8, 12 (Ind. 2015). Moreover, here the incorrect *mens rea* was *not* included in the instruction listing the elements of attempted murder, which was the case in *Clark*. 668 N.E.2d at 1210.

[25]   We therefore conclude that the post-conviction court did not clearly err in concluding that Edwards's trial counsel was not ineffective for failing to ensure that the jury was instructed with regard to the proper *mens rea* for attempted murder.

### B. Failure to Object to Reference to "Knife" in Charging Information

[26]   Edwards also claims that his trial counsel's performance was deficient because she failed to object to the inclusion of a reference to a "knife" in the charging information. As set forth above, the charging information alleged that Edwards stabbed Ford "with a deadly weapon, that is: a knife[.]" Appellant's App. Vol. 4, p. 125. Edwards notes that the police never located a weapon and that he testified that he stabbed Ford with a letter opener, not a knife, in self-defense.[6] He therefore claims that his trial counsel was ineffective for failing to the use of the word "knife" in the charging information.

[27]   Edwards, however, fails to explain precisely on what basis his trial counsel could have objected to the use of the word "knife" in the charging information. To be sure, no knife was recovered from the scene, and Edwards himself claimed that he stabbed Ford with a letter opener. But this does not foreclose the possibility that Edwards did use a knife. But more importantly, the fact that

---

[6] Edwards also mentions that Ford's brother testified that he found several items at the scene of the crime that the police did not find despite a seemingly extensive search. These items included a photograph, a set of keys, a receipt, a CD, and a wallet. Edwards complains that the receipt was admitted into evidence without objection from his trial counsel. Edwards, however, fails to explain on what basis his trial counsel should have objected to this receipt, nor does he develop this argument any further. We will therefore not address it. *See Chappell v. State*, 966 N.E.2d 124, 133 (Ind. Ct. App. 2012) (noting that the failure to develop a cogent argument results in waiver of the issue on appeal) (citing Ind. Appellate Rule 46(A)(8)(a)), *trans. denied.*

the charging information alleged the use of a knife, but the evidence adduced at trial indicated the use of a letter opener, is immaterial. A letter opener is an implement that is of the same general character as a knife and can inflict the same type of wound. *See Holsey v. State*, 253 Ind. 437, 441, 254 N.E.2d 859, 861 (1970) (holding that, even assuming that the weapon used to stab the victim was not a "knife" as alleged in the indictment, there was no material variance between the pleading and the proof because the weapon used was obviously of the same character and inflicted the same type of wound as a knife).

## C. Failure to Object to Statements by Prosecuting Attorney

[28] Edwards also asserts that his trial counsel was ineffective for failing to object to certain statements made by the prosecuting attorney during trial, statements he now claims amounted to prosecutorial misconduct.

[29] Edwards first argues that his trial counsel was ineffective because she failed to object when the prosecuting attorney referred to him as a "liar." *Edwards II* Tr. p. 524. Contrary to Edwards's claim, however, it is not improper for a prosecuting attorney to refer to a defendant, or any other witness, as being untruthful if such a statement is based on evidence presented at trial. Indeed, a prosecutor may comment on the credibility of witnesses so long as the assertions are based on reasons that arise from the evidence. *Ryan v. State*, 9 N.E.3d 663, 671 (Ind. 2014); *see also Cooper v. State,* 854 N.E.2d 831, 835 (Ind. 2006) (holding that no misconduct occurred where prosecutor's statement that the defendant was "one of the finest liars that I've ever heard testify in the courtroom but . . . a liar nonetheless," was based on other evidence that

suggested that the defendant was not telling the truth); *Hobson v. State*, 675 N.E.2d 1090, 1096 (Ind. 1996) (holding that prosecutor did not commit misconduct when he stated in closing argument that the defendant was a liar because the evidence adduced at trial indicated that either the defendant was lying or that other witnesses were lying and prosecutor was simply inviting the jury to determine who was telling the truth).

[30] In a somewhat related argument, Edwards also contends that his trial counsel should have objected to an alleged misstatement by the prosecuting attorney during closing argument. Specifically, he claims that the prosecuting attorney committed misconduct when he stated that the victim, Ford, had not yet met Edwards's son, Kristopher, at the time of the attack.

[31] At trial, Edwards's theory of the defense was that he was concerned about his son spending time with Ford, who he claimed was a gay man interested in young boys. To rebut this, the State presented the testimony of Edwards's ex-wife, Deirdre, who testified that she did not introduce her son to Ford until after the attack. *Edwards II* Tr. p. 501. Ford, however, testified that he had met Kristopher shortly before the attack. *Id.* at 220.

[32] During the State's closing argument, the prosecuting attorney stated:

> The Defendant's son . . . had never even met Lynn Ford by the way according to testimony (inaudible). Had never even been introduced to Lynn Ford. This man had been following and stalking and he knew that his son had never met Lynn Ford.

*Id.* at 526. Edwards argues that his trial counsel performed deficiently by not objecting to this statement. Edwards claims that this statement was false because Ford testified that he had met Kristopher shortly before the attack and because his ex-wife later executed an affidavit averring that Ford had met her son, "but they were not around each other all that much because Kristopher mostly stayed at [Edwards's] house." Post-Conviction Ex. Vol., Petitioner's Ex. 4.

[33]     Despite Edwards's contention that this statement was false, we note that it was supported by the evidence adduced at trial, i.e., the testimony of Edwards's ex-wife. The fact that her later affidavit might conflict[7] with her testimony does not alter the fact that she testified at trial that her son had not met Ford until after the attack.[8] Under these facts and circumstances, we cannot say that Edwards's trial counsel's failure to object to this statement constituted deficient performance.

[34]     Moreover, Edwards's trial counsel presented evidence that countered the State's claim, based on Deirdre's rebuttal testimony, that Ford had not met Edwards's

---

[7] Deirdre's affidavit states that "Lynn Ford had met Kristopher[.]" *Id.* This does not necessarily conflict with her earlier testimony that she introduced her son to Ford in March 2001, after the stabbing.

[8] Edwards suggests that Deirdre's trial testimony might have been perjury and notes that "a conviction based upon perjured testimony cannot stand." Appellant's Br. at 24 n.4 (citing *Gordy v. State*, 270 Ind. 379, 385 N.E.2d 1145, 1146 (1979)). But the court in *Gordy* held that, if the State uses testimony *known* to be false, a conviction must be set aside if there is any reasonable likelihood that the false testimony could have affected the jury's verdict. 270 Ind. at 385, 385 N.E.2d at 1146. Here, Edwards acknowledges that, when she testified at the second trial, Deirdre might not have known that Ford met her son. This does not establish perjury, much less that the State *knew* that her testimony was perjury.

son. The jury was presented with Ford's testimony from the first trial in 2000.[9] During his cross-examination, Ford admitted that he had "occasion to spend some time with [Kristopher]" *before* the stabbing. *Edwards I* Tr. p. 160; *Edwards II* Tr. p. 220. Ford also testified that the first time he met Kristopher was "shortly before this happened[.]" *Edwards I* Tr. p. 160. Edwards's own testimony clearly indicated that he believed that Ford had met his son. *See Edwards II* Tr. at 439 (Edwards testifying that the reason he went to confront Ford was that he was concerned about Ford's relationship with Kristopher). Moreover, Edwards's trial counsel argued to the jury that Edwards confronted Ford because of his concern regarding Ford's relationship with his son. Thus, the jury was well aware of Edwards's theory of the case, and we cannot say that the failure of Edwards's trial counsel to object to the State's closing argument constituted ineffective assistance.

### III. Ineffective Assistance of Appellate Counsel

[35]     Edwards also claims that the post-conviction court clearly erred in determining that his appellate counsel was not ineffective. When reviewing claims of ineffective assistance of appellate counsel, we use the same standard applied to claims of ineffective assistance of trial counsel, i.e., the post-conviction petitioner must show that appellate counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for the deficient performance of counsel, the result of the proceeding

---

[9] As noted Ford died prior to the 2003 retrial, and his testimony from the first trial was presented to the jury.

would have been different. *Manzano*, 12 N.E.3d at 329 (citing *Harris v. State*, 861 N.E.2d 1182, 1186 (Ind. 2007)). To show that counsel was ineffective for failing to raise an issue on appeal, the defendant must overcome the strongest presumption of adequate assistance, and judicial scrutiny is highly deferential. *Id*. (citing *Reed v. State*, 856 N.E.2d 1189, 1195 (Ind. 2006)).

[36] To evaluate the performance prong when counsel failed to raise issues upon appeal, we apply the following test: (1) whether the unraised issues are significant and obvious from the face of the record and (2) whether the unraised issues are "clearly stronger" than the raised issues. *Id*. If the analysis under this test demonstrates deficient performance, then we examine whether the issues that appellate counsel failed to raise, would have been clearly more likely to result in reversal or an order for a new trial. *Id*. at 329–30.

[37] Ineffective assistance is very rarely found in cases where a defendant asserts that appellate counsel failed to raise an issue on direct appeal because the decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel. *Id*. at 330. Thus, our supreme court has warned that we "should be particularly sensitive to the need for separating the wheat from the chaff in appellate advocacy," and we "should not find deficient performance when counsel's choice of some issues over others was reasonable in light of the facts of the case and the precedent available to counsel when that choice was made." *Reed*, 856 N.E.2d at 1196 (quoting *Bieghler v. State*, 690 N.E.2d 188, 194 (Ind. 1997)).

[38] Here, Edwards argues that his counsel in his second appeal was ineffective for failing to present the issue of the incorrect *mens rea* being presented to the jury in the form of the un-amended charging information. Edwards acknowledges that the issue his appellate counsel did raise—a Sixth Amendment *Blakely* violation—was successful and resulted in a new sentencing hearing. But he claims that the *Spradlin* error issue was clearly stronger and would have resulted in reversal of his conviction. We disagree.

[39] We note again that, although the improper "knowingly" *mens rea* was mentioned in the charging information, the jury instruction defining attempted murder made no mention of the improper *mens rea* and correctly instructed the jury with regard to the elements of attempted murder. And the parties both discussed the requirement of the specific intent to kill Ford during their closing statements. Moreover, even if a jury instruction failed to instruct the jury with regard to the requirement of a specific intent to kill, such error is considered harmless if the requirement of a specific intent to kill was set forth in other instructions. *Rosales v. State*, 23 N.E.3d 8, 12 (Ind. 2015).

[40] Thus, assuming it was error for the trial court to include the un-amended charging information, with its reference to the improper "knowingly" *mens rea*, any error was harmless because the jury was clearly instructed that, to convict Edwards of attempted murder, it was required to find that he acted with the intent to kill Ford. The decision of Edwards's counsel in his second appeal not to present what would amount to as, at most, harmless error was not deficient. Accordingly, the post-conviction court properly concluded that Edwards was

not denied the effective assistance of appellate counsel in his second direct appeal.

## IV. Motion to Correct Error

[41] Lastly, Edwards claims that the post-conviction court abused its discretion when it denied his motion to correct error.[10] Rulings on motions to correct error are typically reviewable under an abuse of discretion standard. *State v. Gonzalez-Vazquez*, 984 N.E.2d 704, 706 (Ind. Ct. App. 2013), *trans. denied*. However, if the question presented is a pure question of law, we review the matter *de novo*. *Id*.

[42] Edwards contends that the post-conviction court should have granted his motion to correct error because, he claims, the court failed to include certain undisputed facts in its findings of fact and conclusions of law.[11] It is well settled,

---

[10] Interspersed among Edwards's argument regarding his motion to correct error is a discussion regarding Edwards's motion seeking to have the presiding judge, not the magistrate, rule on his post-conviction petition. This motion claimed that the magistrate could not be impartial because the magistrate's wife was a supervisor in the Marion County Prosecutor's office during the time the alleged incidences of prosecutorial misconduct took place. Appellant's App. Vol. 2, p. 195. The post-conviction court denied this motion, and the magistrate presided at the post-conviction hearing and recommended denying Edwards's petition for post-conviction relief. In his motion to correct error, Edwards noted that his motion to have the presiding judge rule contained an error; that is, the magistrate and the supervisor were actually divorced by the time Edwards had filed his motion to have the presiding judge rule. The motion to correct error noted, however, that the magistrate was married to the supervisor when the alleged incidences of prosecutorial misconduct took place in 2003. Edwards makes no separate, cogent argument that the post-conviction court's denial of his motion to have the presiding judge rule was improper. Moreover, we note that the presiding judge did rule on his post-conviction petition. *See* Appellant's App. Vol. 4, p. 86. Indeed, a magistrate is not authorized by statute to enter a final order on post-conviction petitions. *See* Ind. Code § 33-23-5-5 (delineating the powers of a judicial magistrate); Ind. Code § 33-23-5-9 (providing that, except for when a magistrate presides at a criminal trial or guilty plea hearing, a magistrate may not enter a final order but instead shall report findings to the presiding judge of the court).

[11] Specifically, Edwards claims that the post-conviction court failed to find: that the State did not amend the charging information; that Edwards's trial counsel failed to object to the charging information or instructions;

however, that the failure to enter findings and conclusions is harmless where the claims presented in the post-conviction petition do not entitle the petitioner to relief. *Gann v. State*, 550 N.E.2d 803, 805 (Ind. Ct. App. 1990); *see also Stephenson v. State*, 864 N.E.2d 1022, 1051 (Ind. 2007) (holding that post-conviction court's lack of specific findings and conclusions was harmless). Here, we have already determined that Edwards's post-conviction claims to not entitle him to relief. Any error in the post-conviction court's failure to make certain factual findings is therefore harmless.

# Conclusion

[43] Edwards's claim regarding the law of the case doctrine is presented as a free-standing claim of error. Because there is no indication that this issue was demonstrably unavailable to him on direct appeal, it is waived. The post-conviction court did not clearly err in rejecting Edwards's claims of ineffective assistance of trial counsel. His trial counsel did not perform deficiently in failing to object to the inclusion of the improper *mens rea* of "knowingly" in the charging information because the jury was properly informed of the required intent to kill in the instruction defining attempted murder; the failure to object to the reference to a "knife" in the charging information was not deficient because a knife is of sufficiently similar character to the letter opener that

---

that his trial counsel failed to object to what he claims was prosecutorial misconduct; that the voir dire of the 2003 trial was not transcribed for the appeal in *Edwards II*; that the trial court read the charging information to the jury during the retrial, which information included the "knowing" *mens rea*; that his appellate counsel in *Edwards II* did not confer with the counsel who represented him during retrial; and that his appellate counsel did not recall listening to the voir dire.

Edwards admitted that he used to stab Ford; and his trial counsel was not constitutionally ineffective for failing to object to certain statements made during the State's closing argument. Likewise, Edwards's appellate counsel did not perform deficiently by failing to present a claim of *Spradlin* error on direct appeal, because the jury was properly informed of the requisite specific intent to kill in the jury instruction defining attempted murder. And lastly, the post-conviction court did not err in denying Edwards's motion to correct error. We therefore affirm the judgment of the post-conviction court.

[44] Affirmed.

Najam, J., and Barnes, J., concur.